[Crim. No. 28232. Second Dist., Div. Four. Dec. 3, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD KELSO et al., Defendants and Appellants.

COUNSEL

Michael Maroko and Richard H. Levin, under appointments by the Court of Appeal, and Nathan Goldberg for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, Howard J. Schwab and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DUNN, J.—A four-count information charged Evans, Kelso and others jointly: (count I) with the murder of Hempy on 5 February 1975, a felony, in violation of Penal Code section 187; (count II) with an assault with a deadly weapon with intent to murder Burnett on 5 February 1975, a felony, in violation of Penal Code section 217; (count III) with the kidnaping of O'Hara on 5 February 1975, a felony, in violation of Penal Code section 207; and (count IV) with the murder of O'Hara on 5 February 1975, a felony, in violation of Penal Code section 187. A codefendant, White, was alleged actually to have shot both murder victims with a handgun. As to each charge, Evans and Kelso pled not guilty.

Appellant Kelso was found by a jury to be guilty of second degree murder as to count I, guilty of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a), an offense included within the offense charged in count II; guilty of kidnaping as charged in count III, and guilty of second degree murder as to count IV. Appellant Evans was found guilty of the same offenses, except, regarding count I he was found guilty of involuntary manslaughter in violation of Penal Code section 192, subdivision 2, an offense included within the murder charged in count I. Thereafter, the court sentenced each appealing defendant to state prison; concerning Evans, the sentences on counts I and IV were to be consecutive and on counts II and III to be concurrent with counts I and IV; Kelso's sentences on counts I and II were to be consecutive, and on counts III and IV were to be concurrent with each other. Evans and Kelso each has appealed from the judgment.

Kelso contends that the trial court erroneously instructed the jury regarding second degree felony murder and that the sentence violated Penal Code section 654; Evans contends that he cannot be guilty of manslaughter because he could not have had either the intent or the knowledge to be an aider and abettor and that no instruction should have been given, as to him, on kidnaping.

■ Kelso and Evans both argue the court should not have instructed the jury on the second degree felony-murder rule because kidnaping is not an inherently dangerous crime capable of supporting a second degree felony-murder instruction.

Whether simple kidnaping, viewed in the abstract (*People* v. *Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353]; *People* v. *Williams* (1965) 63 Cal.2d 452 [47 Cal.Rptr. 7, 406 P.2d 647]), is or is not a crime inherently dangerous to human life (*People* v. *Phillips, supra,* 64 Cal.2d at p. 582; *People* v. *Williams, supra,* 63 Cal.2d at p. 458, fn. 5), seems to have been settled by *People* v. *Romo* (1975) 47 Cal.App.3d 976 [121 Cal.Rptr. 684], wherein it was said (at p. 989): "At trial the prosecution relied on the felony-murder theory as to the defendant Romo. Simple kidnapping [*sic*] is a felony inherently dangerous to human life, but is not enumerated in section 189 of the Penal Code. It will, however, support the application of a second degree felony-murder theory." *Romo* relied, in part, upon our Supreme Court's decision in *People* v. *Ford* (1966) 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132]. In *People* v. *Satchell* (1971) 6 Cal.3d 28 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383], our Supreme Court questioned its own decision in *Ford* but that questioning related to the first appeal by *Ford,* appearing in 60 Cal.2d 772 (1964). The Supreme Court did, however, mention *Ford*'s second appeal saying, as to it, (p. 37): "However, we did not avail ourselves of that opportunity but instead quoted language from the first (i.e., pre-*Williams*) appeal in concluding that a conviction of second degree murder was justified on a felony-murder theory."

Appellants argue that *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323] changed the *Ford* rule since it was decided later in time than *Ford.* We are unable to find that *Ireland* mentions the second *Ford* ruling, but *Ireland* does state the following (p. 539): "We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence

produced by the prosecution shows to be an offense included *in fact* within the offense charged." (Italics in original.) In our case, the crime of kidnaping was *not* an offense included within the homicides of Hempy and O'Hara.

In our own case, defendants were charged not only with the kidnaping of O'Hara but also with his murder which occurred on the same date. We have no doubt that the findings of second degree murder were based upon the malice engendered from the kidnaping. (*People* v. *Ireland, supra,* 70 Cal.2d at p. 538.) But, after all is said, who can doubt that a kidnap victim is at the mercy of his captors, whether the kidnaping be accomplished by fraud or force.

The rule expressed in *Ireland* would seem inapplicable. The kidnaping was separate from the homicides and supplied the malice necessary for Kelso's conviction of second degree murder.

■ So far as Evans is concerned, he contends the evidence is insufficient to show that he had the needed mental state to be an aider and abettor of the crimes of which he was found guilty. ■ However, the rule is that all conflicts in the evidence must be resolved in favor of the judgment and all reasonable inferences must be drawn in its favor. (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; *Palmer* v. *Financial Indem. Co.* (1963) 215 Cal.App.2d 419, 430 [30 Cal.Rptr. 204]; *Gandalfo* v. *Gandalfo* (1924) 66 Cal.App. 726, 731 [226 P. 960].) ■ All that is required to show aiding and abetting is knowledge and some action in furtherance of the crime. It was Evans who had borrowed, the day of the crimes, a blue Chevrolet automobile used at the place of Hempy's killing and which transported O'Hara to his execution; and, so far as count II is concerned, a witness testified he had seen a blue Chevrolet automobile just as shots were fired, and Evans was seen in that car. Burnett (count II) had run when told to get into the car and was shot at by others. This evidence seems adequate to sustain an inference that Evans had the knowledge and intent to be an aider and abettor.

■ The sentencing of Kelso and Evans on count III must be set aside, (*In re McGrew* (1967) 66 Cal.2d 685, 688-689 [58 Cal.Rptr. 561, 427 P.2d 161]; *In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998]) since, otherwise, there is a violation of Penal Code section 654 regarding the kidnaping and murder of O'Hara. Both the kidnaping and

the murder had single objectives, so far as the evidence shows. (*People* v. *Rocco* (1971) 21 Cal.App.3d 96, 109-110 [98 Cal.Rptr. 365]; also see *People* v. *Milan* (1973) 9 Cal.3d 185 [107 Cal.Rptr. 68, 507 P.2d 956]; *People* v. *Quinlan* (1970) 8 Cal.App.3d 1063 [88 Cal.Rptr. 125].) The fact that Evans' and Kelso's sentences were concurrent is irrelevant to this. (*In re Wright, supra,* 65 Cal.2d at pp. 654-655.) Inasmuch as second degree murder is punishable (Pen. Code, § 190) by 5 years to life and kidnaping is punishable (Pen. Code, § 208) by imprisonment for 1-25 years, we reduce the sentences by striking the punishments for the lesser crime (i.e., kidnaping) and, as so reduced, affirm the judgments.

Files, P. J., and Kingsley, J., concurred.