[No. B079910. Second Dist., Div. Seven. Aug. 19, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS HERMINIO ESCOBAR et al., Defendants and Appellants.

**COUNSEL**

Wesley A. Van Winkle and Robert Derham, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.—**

## I

### INTRODUCTION

An information charged appellant, Carlos Herminio Escobar (Escobar) and appellant, Milton Estuardo Medina (Medina) with the murder of Javier Ernesto Luna (Luna), in violation of Penal Code section 187, subdivision (a), and further alleged that the offense was a serious felony within the meaning of Penal Code section 1192.7, subdivision (c)(1). In addition, the information alleged that at the time of the offense, Escobar and Medina had been engaged in the crime of kidnapping, within the meaning of Penal Code section 190.2, subdivision (a)(17).

On the People's motion, the information was amended to strike the special circumstance allegation regarding the kidnapping under Penal Code section 190.2.

Escobar and Medina appeal from the judgments entered following a jury trial that resulted in their conviction of first degree murder (Pen. Code, § 187). Both appellants were sentenced to prison for 25 years to life.

We modify the judgments to reflect convictions of second degree murder; urge the Legislature to repeal Penal Code section 1157 and to enact a new statute less rigid than present Penal Code section 1157; affirm the judgments as modified; and remand for a sentencing hearing on the issue of calculation of precommitment credits.

## II

### CONTENTIONS

*Escobar.*

Escobar contends as follows: "1. The jury failed to designate the degree of the offense in its verdict, and the judgment and sentence must therefore be modified to reflect a verdict of second-degree murder. 2. The trial court erred in refusing to give an instruction requested by the defense on the felony-murder merger doctrine, and reversal is compelled. 3. The jury instruction on flight after the offense was improper, and reversal is required. 4. Appellant respectfully joins in all contentions raised by codefendant, Medina, and further asserts the existence of cumulative error."

*Medina.*

Medina contends as follows: "1. The court erred in failing to instruct sua sponte that felony-murder did not apply if the sole purpose of the kidnapping was to assault Javier Luna. 2. The evidence is insufficient to support a conviction for kidnapping felony-murder even if the jury had been properly instructed on merger. 3. The court erred in failing to instruct sua sponte on lesser included offenses where the evidence would have supported convictions for either second degree murder or manslaughter. 4. The court erred in failing to instruct the jury that an aider and abettor's liability for felony-murder depends upon a finding that the killing was the natural and probable consequence of the felony aided and abetted. 5. The trial court's error in admitting the irrelevant prior bad acts without examining the evidence with extreme caution requires reversal."[1]

*Respondent.*

Respondent contends as follows: "1. Since kidnapping is independent of homicide the trial judge properly declined to give the requested instruction; even if the kidnapping was included in fact in the homicide, kidnapping is an independent felonious purpose. . . . 2. There was sufficient evidence to support appellants' convictions. 3. The trial judge properly omitted any instructions on lesser included offenses because the evidence only supported felony murder. 4. The jury was properly instructed to find appellants guilty of felony murder for victims killed during the kidnapping if they either directly committed the kidnapping or aided and abetted the kidnapping; there

---

[1]Each appellant joined in the other's arguments and issues are addressed as if formally raised in the respective briefs.

was no *sua sponte* duty to instruct and any alleged error was harmless. . . . 5. Appellants have waived any claim of improper character evidence by a failure to object; evidence that appellant Medina carried a gun was admissible to show appellant Escobar had acted out of fear; any alleged error was harmless. . . . 6. Penal Code section 1157 does not apply since appellants were convicted under a degree fixing statute; Penal Code section 189 applies over section 1157 because it is the more specific statute; the spirit of Penal Code section 1157 has been met. . . . 7. Evidence that appellants left the restaurant after forcing Mr. Luna into the car was sufficient to support an instruction on flight; any alleged error was harmless. . . . 8. Even if the alleged errors occurred at trial, they were harmless. . . . 9. Appellants' presentence custody credit was incorrectly calculated."

## III

### FACTS

*Prosecution.*

Miguel Marquez was close friends with Luna. Luna worked doing cleaning at a laundry on Santa Monica Boulevard. Next to the laundry, there was a restaurant called El Nuevo San Salvador. Luna used to go to the restaurant on weekends and sing.

On July 10, 1992, Mr. Marquez and Luna went to the restaurant at about 8 p.m. Mr. Marquez parked his car in the lot next door. Luna had nothing to drink. Escobar and Medina were also in the restaurant.

Marquez had seen Escobar and Medina at the restaurant four or five times before. He had never seen Luna with appellants before, and they were not friends.

Appellants were "chatting and drinking beers." They were with Romero Ramos. Brenda Mirroquin was working as a waitress at the restaurant and served Medina and his friends beers. Medina appeared drunk. After 10 p.m., the three men left the restaurant.

Antonio Ochoa, Luna's roommate, was in the parking lot. Ochoa saw Medina come out of the restaurant with the two other men; they went to a blue Mitsubishi jeep. Medina then went back to the restaurant.

Shortly after leaving, Medina came back into the restaurant by himself. Medina asked Ms. Mirroquin if she had seen Luna. Medina said he thought Luna had stolen his radio or speakers. Medina appeared angry.

Medina approached Luna, grabbed his arm, and said he wanted to talk to him. Medina seemed upset and a bit drunk. Luna got up, but Medina did not let go of Luna's arm. Medina also had his arm around Luna. It was unusual for Medina to have his arm around Luna because Luna did not like people to touch him. They went out of the restaurant to the parking lot. Medina did not release his grip. Marquez followed them outside because he thought it was strange.

Marquez did not go into the parking lot and lost sight of them. Ochoa saw Medina and Luna come out of the restaurant and into the parking lot; Medina held Luna by the arm.

Marquez heard a woman screaming, "They're taking Javier away, they're taking Javier." So, Marquez went into the parking lot.

Medina, Escobar, Luna and Ramos were there. Escobar was pushing Luna into the rear passenger side of the blue jeep. Luna was trying to get out of the car and to get away. Escobar said, "Get in because we're going to kill you." Ramos was inside the car pulling Luna by the arm. Medina was behind the wheel, and the car was running.

Ochoa ran to get a security guard; he told Manuel Solis, the restaurant guard, that they were kidnapping Luna. Marquez yelled at appellants to let Luna go.

Eventually, Luna was in the car with appellant Escobar and Ramos on either side of him. The men pushed Luna's head downwards. Luna was struggling with the others in the car. The blue jeep drove out of the lot at a high rate of speed. One window on the driver's side of the car was broken.

Marquez and Solis each got into their cars and followed them. In the back of the jeep, Escobar and Ramos kept pushing Luna down. At Normandie and Fountain, Marquez lost track of the blue jeep. Solis lost track of them at Vermont and Fountain. Marquez and Solis both got the license plate number of the blue jeep and gave it to police officers.

Luna's dead body was found in Brand Park in Glendale. There was blood around the nose and mouth area, and there appeared to be injuries to the mouth. Blood also appeared to have drained down the neck onto the shirt collar. There were strangulation marks around the neck. Luna's body had bruises behind the ear and on the side of the head below the scalp. There was bruising to his lips and nose.

Luna died as a result of strangulation. Injuries on Luna's face were consistent with being beaten or falling on a hard surface but were not consistent with falling on a grassy surface.

Los Angeles Police Detective Larry Cobb received the license plate number of the blue jeep. Medina was one registered owner of the vehicle. Later, the vehicle was seized. There were bloodstains in the back seat of the vehicle. There were bloodstains on the window ledge on the front passenger door, the front passenger seat, and the front passenger seat headrest.

During a search of Escobar's residence, Detective Cobb found a pair of pants with a large bloodstain and a pair of white tennis shoes that also appeared to have bloodstains on them. The pants and shoes were Escobar's, and they were not stained when he wore them to the restaurant.

The bloodstains in the jeep and on Escobar's pants could have come from Luna but could not have come from Escobar. In Los Angeles County, 15 people out of 10,000 would have the same genetic markers found in the stains on the car floor and the pants and on Luna. The blood on Medina's gray and white striped shirt that he wore the night of the murder could have been Luna's, but was not Escobar's.

When the jeep was seized, the weather stripping from the broken window was missing. A glue is used to hold in the weather stripping. There was a white gummy substance around Luna's neck when he was found. The strangulation marks on Luna's neck were consistent with neck compression by the weather stripping.

Marquez identified appellants in pretrial photographic and live lineups.

*Medina's Defense.*

On July 10, 1992, Medina started drinking beer at home at 2 or 2:30 p.m. Escobar and Ramos came to his house at 6 or 6:30 p.m. The three of them knew each other from Guatemala. They drove to El Nuevo San Salvador in Medina's Mitsubishi jeep. Medina said Luna and Mirroquin were friends.

At the restaurant, Medina had three or four more beers. Later, the three of them left the restaurant and went to the car. Medina saw a window was broken and the stereo, speakers, and amplifier were stolen. Medina went back into the restaurant looking for Luna, because he knew Luna sold stolen stereos and speakers.

Medina went in alone and told Luna he wanted to talk to him; Luna said okay. Luna said he wanted to see what had happened and wanted to help recover Medina's things because he knew the people who did it. So, they went outside the restaurant.

In the parking lot, Luna said if they wanted they could look around to see if they could find the people who had Medina's things. They got in the car with Medina driving; Escobar, Luna, and Ramos got in the backseat. There was no pushing or fighting.

Later, in the car, Ramos and Luna got into a fight inside the car. Medina told them to stop but they did not. Ramos said to go to Griffith Park so they could finish the fight there, but Medina did not know how to get there. As he was fighting with Luna, Ramos said to Medina that if he did not do what he said, the same thing would happen to him or to ". . . remember you got kids and you got a wife and you have to do all I say." Somehow they ended up at Brand Park. The car stopped, and Ramos pulled Luna out of the car.

After that, Medina drove home. Ramos told Medina to park two or three blocks away from his house because the police might be there. Ramos said "Mr. Luna is maybe very injured."

Medina denied forcing Luna into the car and denied kidnapping or killing him. Medina said he did not know what the fight was all about. Medina said he never thought about pulling over to stop the car while the fight was happening.

Medina admitted that although he was married, he was having an affair with Ms. Mirroquin. Medina admitted lying to get a false driver's license. Medina said "I no lying. I'm a Christian," and then admitted lying to get a fake identification.

*Escobar's defense.*

Escobar presented no evidence in his defense.

## IV

### DISCUSSION

*The purported error of the trial judge in failing to instruct that felony murder did not apply if the sole purpose of the kidnapping was to assault the victim.*

 At trial, the trial judge instructed the jury that a defendant is guilty of first degree murder when a person is killed during the commission of a kidnapping. The specific intent to commit a kidnapping and the commission of such crime had to be proven beyond a reasonable doubt.

Appellants requested an instruction that said the felony murder rule could only be applied if the jury found the purpose of the kidnapping was for reasons other than committing an act of violence on the victim. The requested instruction was based on the rule of *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]. The trial judge denied the instruction based on *People* v. *Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793], and *People* v. *Pearch* (1991) 229 Cal.App.3d 1282 [280 Cal.Rptr. 584].

Appellants contend the trial judge erred in failing to instruct that the felony-murder theory did not apply if the sole purpose of the kidnapping was to assault the victim.

A. *The Rule of People v. Ireland.*

Under *People* v. *Ireland, supra,* "a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (70 Cal.2d at p. 539, original italics.) In *Ireland,* the defendant drew a gun and shot and killed his wife. Therefore, it was error to instruct the jury they could find the defendant guilty of second degree murder if the homicide was a result of a dangerous felony, such as assault with a deadly weapon.

Later, in *People* v. *Wilson* (1969) 1 Cal.3d 431, 438-439 [82 Cal.Rptr. 494, 462 P.2d 22], instructions were given enabling the jury to find the defendant guilty of first degree murder if the murder occurred during a burglary with the intent to commit an assault with a deadly weapon. The only basis for the felonious entry was the intent to commit an assault with a deadly weapon. The court said that when the entry would be nonfelonious but for the intent to commit the assault, the assault is an integral part of the homicide and is included in fact in the offense charged. Thus, the burglary with the intent to assault was a "necessary ingredient of the homicide" "[and] 'was included in fact' . . . in that the elements of the assault were necessary elements in the homicide." (*Id.* at pp. 438, 441.) Therefore, the instruction on felony murder was erroneous. Thus, felony murder may only be used where the underlying felony is independent and not an integral part of the homicide, otherwise it merges with the homicide.

The *Ireland* rule was further clarified in *People* v. *Burton, supra,* where the defendant claimed the robbery could not be the underlying felony because it was included in fact within the offense. The court rejected the

interpretation of *Ireland* ". . . to mean merely that if the facts proven by the prosecution demonstrate that the felony offense is included in fact within the facts of the homicide and integral thereto, then that felony cannot support a felony-murder instruction." (6 Cal.3d at p. 387.) The court concluded: "that there is a very significant difference between deaths resulting from assaults with a deadly weapon, where *the purpose of the conduct was the very assault which resulted in death,* and deaths resulting from conduct for an independent felonious purpose, such as robbery or rape, which happened to be accomplished by a deadly weapon and, therefore, technically included an assault with a deadly weapon, . . ." (*Ibid.,* italics added.)

The court said that robbery, as well as other felonies, has an independent felonious purpose, in the case of robbery to acquire money or property. Therefore, because the felony had an independent felonious purpose, the robbery was not integral to the homicide. The court noted that *Wilson* was specifically limited to those situations where the entry is coupled with an intent to commit an assault with a deadly weapon.

Thus, in examining the *Ireland* rule in *People* v. *Morse* (1992) 2 Cal.App.4th 620, 653-654 [3 Cal.Rptr.2d 343], this court has said, "*Ireland* has been applied when the homicide involved an *assault.* . . . [¶] But *Ireland* has *not* been applied, even in assault-homicide cases, when death resulted 'from conduct [with] an independent felonious purpose, such as robbery or rape, which happened to be accomplished by a deadly weapon and therefore technically includes assault with a deadly weapon.' . . . [¶] Further, *Ireland* has not been applied when there was no assault . . . or when the 'assault' had a 'collateral' purpose . . . ." (Italics in original; citations omitted.)

 This court held that the felony of possession of a bomb was not integral to a homicide because it involved no assault. We thus hold that the kidnapping is a felony which is not integral to the homicide and involves no assault and it was therefore proper for the trial court to refuse appellants' requested instruction pertaining to felony murder. As hereafter explained, even if kidnapping involves an assault, it also has an independent felonious intent.

B. *Kidnapping Is Independent of Homicide.*

In *People* v. *Kelso* (1976) 64 Cal.App.3d 538, 541-542 [134 Cal.Rptr. 364], the court examined whether kidnapping was an inherently dangerous felony and examined kidnapping in light of *Ireland.* There, the kidnapping and murder of the victim occurred on the same date and the murder was

based on the underlying kidnapping. The court held: "The rule expressed in *Ireland* would seem inapplicable. The kidnaping was separate from the homicides and supplied the malice necessary for [the defendant's] conviction of second degree murder."[2] (64 Cal.App.3d at p. 542.) In *People* v. *Smith* (1984) 35 Cal.3d 798, 805 [201 Cal.Rptr. 311, 678 P.2d 886], the California Supreme Court cited *Kelso* with approval. The court said, "Cases in which the second degree felony-murder doctrine has withstood an *Ireland* attack include those in which the underlying felony was . . . kidnaping [citing *Kelso*]. . . ." (*Ibid.*) Thus *Kelso* and *Smith* make clear that kidnapping is a felony that is independent of a homicide.

It cannot be said that the purpose of the conduct involved in kidnapping is "the very assault which resulted in death." (*People* v. *Burton, supra,* 6 Cal.3d at p. 387.) Furthermore, kidnapping is hardly a "necessary ingredient" or "necessary element" of the homicide. (*People* v. *Wilson, supra,* 1 Cal.3d at pp. 438, 441.)

Here, the purpose of the conduct involved in kidnapping was to take Luna away by force. This movement of Luna against his will was not an assault that resulted in homicide. Kidnapping was a felonious action which occurred separate from and regardless of any assault. Thus, kidnapping is not integral to a homicide and appellants' contention otherwise is lacking in merit. (See *People* v. *Mattison* (1971) 4 Cal.3d 177, 184-186 [93 Cal.Rptr. 185, 481 P.2d 193] [poisoning food may be underlying felony]; *People* v. *Lynn* (1971) 16 Cal.App.3d 259, 272 [94 Cal.Rptr. 16] [felony attempted escape is not integral part of homicide]; *People* v. *Calzada* (1970) 13 Cal.App.3d 603, 606 [91 Cal.Rptr. 912] [driving under the influence of heroin not an integral part of homicide]; *People* v. *Taylor* (1970) 11 Cal.App.3d 57, 64 [89 Cal.Rptr. 697] [furnishing heroin not an integral part of homicide].)

C. *Even If Kidnapping Were an Integral Part of Homicide, There Was a Separate Felonious Purpose.*

Appellants contend the sole purpose of the kidnapping was to commit an assault on Luna. Even if the evidence showed that the kidnapping was included "in fact" within the facts of the homicide, it is not enough because of the independent felonious purpose of the kidnapping.

In every kidnapping, any assault or use of force is also for the independent felonious purpose of moving the victim without his or her consent. This is the definition of kidnapping. If appellant had died as a result of such an

---

[2]In 1990, Proposition 115 added kidnapping as one of the enumerated felonies included in first degree felony murder. (Pen. Code, § 189.)

assault, there was still the independent felonious purpose for the use of force. (See *People* v. *Johnson* (1993) 15 Cal.App.4th 169, 174-175 [18 Cal.Rptr.2d 650] [conviction for Vehicle Code section 2800.2 did not merge since defendant had intent to elude police even though also drove with willful or wanton disregard for safety of persons].)

Thus, where an assault occurs as part of a burglary with intent to commit an assault, there is no felonious purpose independent of assault. Where an assault occurs as part of a robbery, there is the separate felonious purpose to deprive the victim of property. As with robbery, where an assault occurs as part of a kidnapping, there is the separate felonious purpose to move the victim without his consent. The purpose of moving the victim has a separate felony consequence of liability for kidnapping, separate from any assault. Therefore, even if the kidnapping was in fact included in the homicide, there was a separate felonious purpose. Appellants' contentions to the contrary are without merit.

Also, contrary to appellants' contentions, the rule as applied here will further the purpose of the felony-murder rule. Where a defendant has decided to embark on an assault, there is little doubt that the felony-murder rule will not deter his actions. However, the felony-murder rule may reasonably be expected to deter defendants from engaging in a kidnapping by holding them liable for any deaths which result. (See *People* v. *Burton*, *supra*, 6 Cal.3d at p. 387; *People* v. *Mattison*, *supra*, 4 Cal.3d at p. 185; *People* v. *Johnson*, *supra*, 15 Cal.App.4th at p. 175.)

Thus, *Ireland* does not apply to kidnapping because it does not involve an assault which is the same conduct which constitutes the homicide. Furthermore, any assault which may have been part of the kidnapping was for the purpose of moving Luna against his will, an independent felonious purpose. Therefore, since *Ireland* does not apply, the trial judge properly denied appellants' proffered instruction. (*People* v. *Oliver* (1985) 168 Cal.App.3d 920, 924-925 [214 Cal.Rptr. 587]) [proper to refuse defense instruction based on *Ireland* where underlying felony of arson may have been to kill or merely cause destruction].)

*The purported insufficiency of the evidence to support appellants' convictions.*

Appellants contend that since there is no evidence establishing a purpose for the kidnapping apart from the assault, the evidence is insufficient to support the conviction for felony murder. Appellants are mistaken.

Appellants' claim that there must be a purpose for the kidnapping separate from the assault is based on a citation to *People* v. *Weidert* (1985) 39 Cal.3d

836, 842 [218 Cal.Rptr. 57, 705 P.2d 380], which notes that a kidnapping felony-murder *special circumstance* cannot be sustained where the primary goal was to kill and the kidnapping was merely incidental to the murder.

Appellants' citation to rules on a kidnapping felony-murder *special circumstance* is inappropriate since this is not a special circumstance case, but rather statutory felony murder.

Additionally, even if such rule was applicable, there was strong evidence that appellants intended to kidnap regardless of or in addition to intending to kill Luna.

█ In reviewing a judgment for the sufficiency of the evidence, a court must review the evidence, in the light most favorable to the judgment, to see if there is substantial evidence from which any rational trier of fact could find each element of the crime beyond a reasonable doubt. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573-574, 99 S.Ct. 2781]; *People* v. *Ceja* (1993) 4 Cal.4th 1134, 1138 [17 Cal.Rptr.2d 375, 847 P.2d 55]; *People* v. *Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) "The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. [Citations.]" (*Bloom, supra,* 48 Cal.3d at p. 1208; *In re Leland D.* (1990) 223 Cal.App.3d 251, 258 [272 Cal.Rptr. 709].)

"If the circumstances reasonably justify the findings of the trier of fact as to each element of the offense, an opinion of the reviewing court that the circumstances might also lead to a contrary finding does not warrant reversal. [Citation.]" (*In re Leland D., supra,* 223 Cal.App.3d at p. 258; *People* v. *Ceja, supra,* 4 Cal.4th at p. 1139.)

█ In *People* v. *Raley* (1992) 2 Cal.4th 870, 903 [8 Cal.Rptr.2d 678, 830 P.2d 712], the court rejected the defendant's suggestion that a kidnapping special circumstance could not be sustained if he had any intent to kill when he kidnapped. The court noted, "Concurrent intent to kill and to commit an independent felony will support a felony-murder special circumstance. [Citation]." (*Ibid.*)

Here, there was evidence that appellants forced Luna into a car and drove him away. Appellants may have wanted to kidnap, threaten, or scare Luna. Since Medina was angry at Luna and thought Luna had stolen his stereo, appellants most likely kidnapped Luna to get information as to what had

happened to the stereo stolen from Medina's car. The threat to kill Luna is consistent with and supports these possibilities.

Thus, even if appellants had an intent to kill, there was strong evidence to show that they had a concurrent intent to kidnap which was not incidental. Indeed, in order to convict appellants, the jury had to find that appellants had the specific intent to commit kidnapping. Appellants' contention lacks merit.

*The purported error of the trial judge in omitting any instructions on lesser included offenses.*

 Appellants contend the trial judge erred in failing sua sponte to instruct the jury on lesser included offenses of murder and manslaughter. Generally, a trial judge in a criminal trial must instruct the jury on the general principles of law which are relevant and raised by the evidence. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311].) Furthermore, a trial judge must instruct on lesser included offenses "when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]" (*Id.* at pp. 323-324; *People* v. *Hardy* (1992) 2 Cal.4th 86, 184 [5 Cal.Rptr.2d 796, 825 P.2d 781]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) "Speculation is an insufficient basis upon which to require the giving of an instruction on a lesser offense. [Citations.]" (*People* v. *Wilson* (1992) 3 Cal.4th 926, 941 [13 Cal.Rptr.2d 259, 838 P.2d 1212].) Second degree murder and voluntary manslaughter are lesser included offenses of the charge of murder. (*People* v. *Cooper* (1991) 53 Cal.3d 771, 827 [281 Cal.Rptr. 90, 809 P.2d 865]; *Wickersham, supra,* 32 Cal.3d at p. 326.)

However, when the evidence shows that a homicide was committed in the course of a felony listed in Penal Code section 189, the trial judge may instruct the jury that the defendant is guilty of first degree murder or nothing and may properly decline to give instructions on second degree murder and manslaughter. (*People* v. *Turner* (1984) 37 Cal.3d 302, 327 [208 Cal.Rptr. 196, 690 P.2d 669], overruled on other grounds in *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1115 [240 Cal.Rptr. 585, 742 P.2d 1306]; *People* v. *Duren* (1973) 9 Cal.3d 218, 236-237 [107 Cal.Rptr. 157, 507 P.2d 1365]; *People* v. *Mabry* (1969) 71 Cal.2d 430, 437-438 [78 Cal.Rptr. 655, 455 P.2d 759]; *People* v. *Boyd* (1990) 222 Cal.App.3d 541, 564-565 [271 Cal.Rptr. 738].)

 ·Appellants' case is similar to *People* v. *Wilson, supra,* 3 Cal.4th at page 940, where the defendant claimed the trial judge erred in declining to

instruct on second degree murder because the circumstantial evidence did not conclusively establish that the murder was committed in the course of a robbery. The victim had been found dead with his money missing, and the defendant claimed that someone else could have robbed the victim after the defendant had shot him and fled. Noting there was no evidence to support the defendant's speculation, the court held the trial judge had properly refused the instructions on second degree murder. (*Id.*, at p. 941.)

Here, similar to *Wilson*, appellants' theories are speculation. Appellants suggest that the jury could have found that no kidnapping occurred by finding that Luna voluntarily went with appellants in the car. Alternatively, the jury could have found as to Medina that there was no intent to kidnap as a result of intoxication.

Then, while in the car, Luna was "assaulted and killed by Escobar" or "Luna was eventually killed, either in an impulsive, unpremeditated act that [Medina] encouraged, or without malice in a sudden quarrel over the theft."

If the jury found that no kidnapping had occurred, then they necessarily rejected most of the prosecution's evidence, which showed Luna was taken by force. Without this evidence there was virtually nothing to show that appellants took any physical action against Luna or harbored any ill feelings against him. Rather, the jury would have been left with the defense evidence, which showed that appellants had nothing at all to do with the assault, and so were not guilty at all.

To say that the jury may have rejected the prosecution evidence and part of the defense evidence and found a sudden quarrel is pure speculation and was not shown by any evidence. The physical evidence of blood in the car might support an inference of an assault but not by any person in particular. Additionally, when tied to the only other evidence of what occurred in Medina's car aside from the prosecution's evidence, which was Medina's testimony, appellants were not involved in the quarrel which occurred between Ramos and Luna.[3]

All of the evidence that showed Luna left voluntarily also indicated that appellants did not assault him. The evidence which showed appellants were responsible for the assault also supported the intent to kidnap. Thus, the two versions of the evidence were clear: either appellants kidnapped Luna and he died in the commission of the kidnapping; or appellants had no intent to kidnap and consequently were not guilty of anything.

---

[3]There was prosecution evidence that an assault occurred in the car but this was evidence that supported the kidnapping.

Appellants' assertion that the jury may have found no kidnapping and a later assault is speculation. Therefore, since there was no evidence that anything besides a kidnapping felony murder occurred, the trial judge had no sua sponte duty to instruct on second degree murder and manslaughter.

*The purported error of the trial court in failing to instruct the jury that an aider and abettor's liability for felony murder depends upon a finding that the killing was the natural and probable consequence of the felony aided and abetted.*

■ Appellants contend the trial judge erred in failing sua sponte to instruct the jury that an aider and abettor's liability for felony murder depends on a finding that the killing was a natural and probable consequence of the felony aided and abetted.

The trial judge gave CALJIC No. 8.27 as follows: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of kidnapping, all persons, who either directly and actively commit the act constituting such crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

A. *Appellants Were Guilty of Felony Murder If They Aided and Abetted a Kidnapping and a Person Was Killed During the Kidnapping.*

■ Appellants invoke established principles of aider and abettor liability articulated in *People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198], and argue that they must be applied to the felony-murder doctrine. The argument is based on a failure to distinguish between felony murder and aiding and abetting theories of murder, which comprise two separate doctrines. "[F]irst degree felony murder encompasses a far wider range of individual culpability than deliberate and premeditated murder. It includes not only the latter, but also a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident; it embraces both calculated conduct and acts committed in panic or rage, or under the dominion of mental illness, drugs, or alcohol; *and it condemns alike consequences that are highly probable, conceivably possible, or wholly unforeseeable.*" (*People* v. *Dillon* (1983) 34 Cal.3d 441, 477 [194 Cal.Rptr. 390, 668 P.2d 697], italics added.)

Moreover, "[f]irst degree felony murder does not require a strict causal relation between the felony and the killing. The only nexus required is that

both are part of one continuous transaction. [Citations.]" (*People* v. *Johnson* (1992) 5 Cal.App.4th 552, 561 [7 Cal.Rptr.2d 23]; *People* v. *Thompson* (1990) 50 Cal.3d 134, 171 [266 Cal.Rptr. 309, 785 P.2d 857]; *People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1016 [248 Cal.Rptr. 568, 755 P.2d 1017].)

Aiding and abetting is a distinct theory of homicide. Unlike the felony-murder theory, the question of guilt as an aider and abettor is one of legal causation. "Thus, the ultimate factual question is whether the perpetrator's criminal act, upon which the aider and abettor's derivative criminal liability is based, was ' "reasonably foreseeable" ' or the probable and natural consequence of a criminal act encouraged or facilitated by the aider and abettor." (*People* v. *Francisco* (1994) 22 Cal.App.4th 1180, 1190 [27 Cal.Rptr.2d 695].)

In *People* v. *Anderson, supra*, 233 Cal.App.3d at page 1658, the defendant raised the same claim as appellants, that the instruction on felony murder and aiding and abetting in CALJIC No. 8.27 is improper because it does not limit aiding and abetting liability to those deaths that are foreseeable. The court held that where the charged killings took place during the course of an independent felony, a defendant ". . . who aided and abetted the robbery, could potentially be liable for murder committed in the course of that robbery, even though the killings were *not* natural, reasonable, or probable consequences of the robbery. [Citation.]" (233 Cal.App.3d at p. 1658, italics in original.) The court noted that felony murder is not limited to foreseeable deaths. (*Ibid.*) Therefore, the instruction was proper. (*Id.* at p. 1659.)

 Thus, *Anderson* makes clear that accomplices are liable for felony murder even if the killing was not a natural and probable consequence. This rule is in accord with the general principle that felons are liable for felony murder without any strict causal relation and even if accidental or "wholly unforeseeable."

Appellants contend that *Anderson* conflicts with the rule in *People* v. *Washington* (1965) 62 Cal.2d 777, 781-782 [44 Cal.Rptr. 442, 402 P.2d 130]. In *Washington*, the court stated, "All persons aiding and abetting the commission of a robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design. [Citations.]" (*Id.* at p. 782.)

Appellants equate the requirement that the killing occur in furtherance of a common design with the rule that an aider and abettor may be liable only for those offenses which are a natural and probable consequence of the crime encouraged or aided.

This is meritless since, as noted above, there is no requirement of a causal relationship between the felony and homicide in the first degree felony murder. (*People* v. *Johnson*, *supra*, 5 Cal.App.4th at p. 561; *People* v. *Thompson*, *supra*, 50 Cal.3d at p. 171; *People* v. *Ainsworth*, *supra*, 45 Cal.3d at p. 1016.)

Appellants' reliance on decisions discussing conspiracy doctrine to support their challenge to the felony-murder instruction is similarly flawed. The California Supreme Court has defined felony murder in broad terms to include all killings which occur as part of the felony transaction. There is no requirement, as there is in conspiracy law, that the actions which resulted in the killing were in furtherance of the conspiracy. (See *People* v. *Croy* (1985) 41 Cal.3d 1, 16-17 [221 Cal.Rptr. 592, 710 P.2d 392].)

Thus, there is no requirement that killings which occur during the perpetration of a felony be a natural and probable consequence of the felony aided and abetted.

B. *The Trial Judge Had No Sua Sponte Duty to Give the Instructions as Appellants Contend.*

Even if the law is as appellants contend, the trial judge had no sua sponte duty to instruct as appellants contend.

In *People* v. *Cox* (1991) 53 Cal.3d 618, 669 [280 Cal.Rptr. 692, 809 P.2d 351], the court rejected a claim that it was error to omit a modification to aiding and abetting instructions requiring the jury to find whether the crime was a "natural and probable consequence" of the act encouraged. (*Id.* at p. 669.) The court stated:

"The modification suggested in [citation], constitutes a clarification of the jury's fact-finding responsibility, not the delineation of an element of a crime or a form of criminal liability. . . . That is, as worded, the instruction does not withdraw an element from the jury's determination or otherwise interject an impermissible presumption into the deliberative process.

"Under such circumstances, we require the defendant to request further instructional amplification or explanation as he deems necessary." (*People* v. *Cox*, *supra*, 53 Cal.3d at p. 669, fn. and citations omitted.)

Thus, the "natural and probable consequence" modification of aiding and abetting must be sought by defense counsel where applicable. Accordingly, if the "natural and probable consequence" modification is applicable to felony murder, it must be requested by defense counsel under *Cox*. Appellants did not do so.

## C. *Any Alleged Error Was Harmless.*

Appellants contend the jury instruction may have allowed the jury to convict appellants of murder without finding that murder was a natural and probable consequence of the kidnapping.

Any failure to give further instruction on natural and probable consequences was harmless since no reasonable jury could have concluded the murder was not a natural and probable consequence of the kidnapping. (*People* v. *Cox*, *supra*, 53 Cal.3d at p. 669.)

Medina was angry and drunk, and his car had just been burglarized. Medina thought Luna was responsible for the burglary and theft. Medina kidnapped Luna by applying force on his arm and by wrapping an arm around him. Then, Escobar and Ramos forced Luna into the back of the jeep and struggled with him. Additionally, Escobar had threatened to kill Luna. Luna was taken to a distant location miles away from the restaurant.

Thus, Luna was kidnapped forcefully and violently out of anger and with the threat of death. Under these facts, no reasonable jury could conclude that the murder was not a natural and probable consequence of the kidnapping. Therefore, even if appellants' statement of the law is correct, and even if the trial judge had a sua sponte duty to instruct as appellants suggest, any error was harmless. (*People* v. *Cox*, *supra*, 53 Cal.3d at p. 669.)

*The purported error of the trial court in admitting evidence of prior bad acts.*

Out of the presence of the jury, Escobar's trial counsel inquired about whether he could cross-examine Solis regarding possession of a firearm by Medina. He said it would be relevant to his client's defense, that Escobar was "acting under fear of Mr. Medina." Medina's counsel objected that the information was not relevant. The trial judge said it was relevant. Escobar's counsel suggested an Evidence Code section 402 hearing.

Still out of the presence of the jury, Solis testified he had seen Medina in possession of a firearm at the restaurant on two occasions. The first time, about a month before July 10, 1992, Solis found Medina in possession of a .45-caliber Colt semiautomatic pistol. Solis had Medina return the gun "into the vehicle, take it home." The second incident was two weeks later. Solis approached Medina as he was leaving. Medina saw what appeared to be a gun under his shirt. Solis touched the gun and told him to please leave the gun outside the establishment because he was going to arrest him. Outside

the restaurant, in the parking lot to the laundromat, Medina fired a round. Solis had the shell, which was a .45-caliber automatic Colt pistol round.

Solis did not see Medina in possession of a handgun on July 10.

At trial, Solis gave substantially the same testimony he had given at the Evidence Code section 402 hearing.

 Appellants contend the trial judge erred in admitting evidence of prior bad acts.[4] As developed below, appellants waived such claims by failing to object that the evidence was inadmissible character evidence. Moreover, the trial judge was within his discretion to admit the evidence to show Escobar's state of mind. Finally, any alleged error was harmless.

A. *Appellant's Failure to Object Waives Any Error as to Admission of Character Evidence.*

At trial, Medina's counsel objected to the evidence of Medina's gun possession as not relevant, but he did not object that the evidence was improper character evidence. Therefore, appellants have waived any claim of error.

In *People* v. *Thomas* (1992) 2 Cal.4th 489, 519 [7 Cal.Rptr.2d 199, 828 P.2d 101], the defendant claimed the trial judge had erred in admitting evidence that the defendant enjoyed stalking people. The defendant claimed the evidence was unduly prejudicial and improper character evidence under Evidence Code section 1101, subdivision (a). (2 Cal.4th at pp. 519-520.) The court ruled that the claim of improper character evidence was waived because the defendant had failed to object on that ground at trial. (*Id.* at p. 520; see Evid. Code, § 353; *People* v. *Morris* (1991) 53 Cal.3d 152, 187-188, 190 [279 Cal.Rptr. 720, 807 P.2d 949] [Evidence Code section 353 requires an objection be a request to exclude specific evidence on a specific legal ground]; *People* v. *Gallego* (1990) 52 Cal.3d 115, 174 [276 Cal.Rptr. 679, 802 P.2d 169]; *People* v. *Solis* (1985) 172 Cal.App.3d 877, 885 [218 Cal.Rptr. 469] [failure to make an objection on basis of character evidence waives claim on appeal.])

Here, the objection was on the basis of relevance, not character evidence. Therefore, appellants' claim that the gun possession evidence was improper character evidence has been waived because the ground was not raised at trial. (*People* v. *Thomas, supra,* 2 Cal.4th at p. 520.)

---

[4]As previously noted, each appellant has joined in the other's contentions. As to Escobar, however, he is precluded from raising this claim under the doctrine of invited error. Escobar not only failed to object to the admission of the evidence, but he sought its admission.

### B. *Evidence That Medina Carried a Firearm Was Relevant to Show Escobar Had Acted Out of Fear of Medina.*

 Evidence possessing any tendency in reason to prove or disprove any disputed material fact is relevant and admissible. (Evid. Code, §§ 210, 351; *People v. Garceau* (1993) 6 Cal.4th 140, 177 [24 Cal.Rptr.2d 664, 862 P.2d 664].)

In its discretion, a court may exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice. (Evid. Code, § 352.) Furthermore, " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' " (*People v. Zapien* (1993) 4 Cal.4th 929, 958 [17 Cal.Rptr.2d 122, 846 P.2d 704]; *People v. Karis* (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189]; *People v. Yu* (1983) 143 Cal.App.3d 358, 377 [191 Cal.Rptr. 859].)

The trial judge has "wide discretion" in deciding the relevancy of evidence. (*People v. Kelly* (1992) 1 Cal.4th 495, 523 [3 Cal.Rptr.2d 677, 822 P.2d 385].)

Evidence that a person committed a crime or other wrong is admissible when it logically, naturally, and by reasonable inference is relevant to show some fact at issue, such as motive, and intent, other than the person's disposition to commit such acts. (*People v. Daniels* (1991) 52 Cal.3d 815, 856 [277 Cal.Rptr. 122, 802 P.2d 906]; Evid. Code, § 1101.) "The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. . . . When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant." (52 Cal.3d at p. 856, citations omitted; *People v. Felix* (1993) 14 Cal.App.4th 997, 1004 [18 Cal.Rptr.2d 113].)

 Here, evidence that Medina carried a gun was admissible to show that Escobar had acted out of fear of Medina.

Appellants' case is similar to *People v. Gallego, supra,* 52 Cal.3d at page 174, where the defendant claimed the evidence that he had beaten his wife

was improperly admitted character evidence. After initially noting that such a claim had been waived, the court held that the admission was also proper to explain the relationship between the defendant and his wife. (*Ibid.*) The evidence helped explain why the defendant's wife had helped the defendant lure and kill victims—because she was afraid. (*Ibid.; People* v. *Solis, supra,* 172 Cal.App.3d at pp. 884-887 [proper to admit evidence that defendant had previously killed his brother in order to show why rape victim was afraid of defendant].)

Here, as in *Gallego,* the evidence that Medina carried a gun was admissible to show that Escobar acted out of fear of Medina. Medina had previously been carrying a loaded firearm on two occasions at the same restaurant. Although Medina did not have one on the night of the murder, it would be reasonable to infer that Escobar might think he had one. Furthermore, Escobar could then argue he had he had not acted with the intent to kidnap but had acted out of fear of Medina.

However, appellants claim that the evidence was inadmissible because Escobar never presented any further evidence that he had acted out of fear of Medina, Escobar never argued such a theory, and to the contrary, Escobar even told the jury to rely on the evidence presented by Medina.

However, appellants fail to look at the state of the evidence and the offer of proof before the trial judge at the time of the ruling. Based on the offer of proof by Escobar's counsel, the evidence was clearly relevant at the time it was offered. If Escobar later decided to rely on Medina's testimony and abandon a duress type of defense, this is not the fault of the trial judge. If such evidence was no longer relevant, appellants could have surely made a motion to strike and sought an admonition. They failed to do so.

Appellants, citing *People* v. *Holt* (1984) 37 Cal.3d 436, 451 [208 Cal.Rptr. 547, 690 P.2d 1207], also claim reversal is required because the trial judge failed to review the evidence with care or caution. (But see *People* v. *Clair* (1992) 2 Cal.4th 629, 660 [7 Cal.Rptr.2d 564, 828 P.2d 705] [trial judge need not expressly weigh prejudice and probative value on the record]; *People* v. *Triplett* (1993) 16 Cal.App.4th 624, 627-629 [20 Cal.Rptr.2d 225].) The trial judge did carefully evaluate the evidence.

The trial judge ruled the evidence was relevant after an offer of proof by Escobar's counsel. Additionally, the trial judge held a hearing outside the presence of the jury to confirm what Solis's testimony would be. The trial judge specifically noted that the testimony was in accordance with the offer of proof. If the trial judge did not more carefully evaluate the evidence in

light of the rules on character evidence it was probably because appellants failed to object on those grounds.

C. *Any Alleged Error in Admitting the Evidence Was Harmless.*

Evidence Code section 353 states: "A verdict or finding shall not be set aside . . . by reason of the erroneous admission of evidence unless: [¶] . . . (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

Here, even if it was error to admit the complained-of evidence, any error in admitting the evidence was harmless since it is not reasonably probable that appellants would have received a better result if the evidence had not been admitted. (*People* v. *Malone* (1988) 47 Cal.3d 1, 22 [252 Cal.Rptr. 525, 762 P.2d 1249] [*Watson* harmless error analysis applies to erroneous admission of character evidence]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Felix, supra,* 14 Cal.App.4th at pp. 1007-1008; *People* v. *Solis, supra,* 172 Cal.App.3d at p. 887.)

The evidence of appellants' guilt for kidnapping felony murder was strong.

Additionally the gun evidence was minor in the trial and even in closing argument. During cross-examination, the prosecutor focused more on Medina as a liar as shown by his having an affair and lying to get a false driver's license. While the prosecutor briefly mentioned the gun possession in closing argument, the prosecutor concentrated on evidence that showed Medina was a liar in that he had lied to get a false identification. Additionally, the prosecutor argued extensively on how improbable Medina's testimony was.

Thus considering the minor import of the evidence, and the strong evidence of guilt, there is no reasonable probability that appellants would have received a better result if the evidence had not been admitted. Any alleged error was harmless.

*The contention that the judgment and sentence must be modified to reflect a verdict of second degree murder for failure of the jury to designate the degree of the offense in its verdict.*

 The contention that the jury failed to adequately find the degree of the murder is well taken since the jury did not comply with Penal Code

section 1157 because the verdict form did not contain an express finding of degree. The verdict form contained a finding that appellants were guilty of murder "as charged in Count 1 of the Information." The information charged that appellants "did willfully, unlawfully, and with malice aforethought murder [the victim] . . . ." In relevant part, Penal Code section 1157 provides "[w]henever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury . . . must find the degree of the crime or attempted crime . . . . Upon the failure of the jury . . . to so determine, the degree [of the offense] shall be deemed to be of the lesser degree."

In addition to the foregoing, the jury was instructed that "the crime charged in the information, *namely first degree felony-murder*" required a finding of intent. (Italics added.) The jury was next instructed as to Medina that "[i]n the crime of *first degree felony-murder*, of which the defendant is accused" the specific intent to commit kidnapping must be found. (Italics added.) Thereafter, as to both appellants, the jury was instructed, "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission of the crime of kidnapping is *murder of the first degree* when the perpetrator had the specific intent to commit such crime. The specific intent to commit kidnapping and the commission of such crime must be proved beyond a reasonable doubt." (Italics added.)

The jury was again instructed that the degree of the murder alleged was first degree murder, as follows: "If a human being is killed by any one of several persons engaged in the commission of the crime of kidnapping, all persons, who either directly and actively commit the act constituting such crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are *guilty of murder of the first degree,* whether the killing is intentional, unintentional, or accidental." (Italics added.)

Although the jury was expressly instructed that the information alleged only "first degree murder" and the verdict form expressly designated the murder to be "as charged . . . in the Information," this finding must be deemed inadequate under the compulsion of *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011]. In addressing the effect of such instructions, *McDonald* held:

"Contrary to respondent's assertion, the key is not whether the 'true intent' of the jury can be gleaned from circumstances outside the verdict

form itself; instead, application of the statute turns only on whether the jury specified the degree in the verdict form. . . .

"Respondent contends . . . that because the jury was instructed solely on first degree murder, any verdict of guilt on the murder charge could only be in the first degree. The jury was instructed that before it could return a verdict of guilt on the murder charge, it must unanimously agree on whether defendant was guilty of murder of the first degree. Thus, respondent submits, the jury's verdict of guilty of murder 'as charged' constituted an implied finding of first degree murder.

"While respondent is correct that the jury was not instructed on the lesser included offense of second degree murder, we see no reason why this variation in the facts should lead to a different result. First, the terms of the statute are unambiguous. No special exception is created for the situation presented by this case; had the Legislature chosen to make section 1157 inapplicable to cases in which the jury was instructed on only one degree of a crime, it could easily have so provided. The statute requires that 'if the jury shall find the defendant guilty, the verdict shall specify the degree of murder . . . . It establishes a rule to which there is to be no exception, and the Courts have no authority to create an exception when the statute makes none.' . . .

"Furthermore, prior applications of the statute suggest no rationale for excepting this case from the plain language of section 1157. As we have noted, this is not the first case in which the statute compels the court to deem the crime to be of the lesser degree despite indications that the jury's failure to specify degree was not intentional but resulted from mistake or inadvertence." (*People* v. *McDonald, supra*, 37 Cal.3d at pp. 382-383; fn. and citations omitted.)[5]

The foregoing result is neither just nor fair because there could have been no conviction in this case in the absence of a finding of first degree murder. The result here represents an example of a result compelled by a statute where "form triumphs over substance." (*People* v. *Johns, supra*, 145 Cal.App.3d at p. 295; see *People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 74-75 [2 Cal.Rptr.2d 389, 820 P.2d 613].) In this regard, the observations in the concurring opinion in *People* v. *Bonillas* (1989) 48 Cal.3d 757 [257 Cal.Rptr. 895, 771 P.2d 844] are worth repeating.

[5]Under these circumstances, it is unnecessary to consider respondent's additional argument that statutory felony murder is only of the first degree and, thus, is not "distinguished into degrees" within the meaning of Penal Code section 1157. (Cf. *People* v. *Johns* (1983) 145 Cal.App.3d 281, 295 [193 Cal.Rptr. 182]; *People* v. *Thomas* (1978) 84 Cal.App.3d 281, 284-285 [148 Cal.Rptr. 532]; see *People* v. *Balinton* (1992) 9 Cal.App.4th 587, 590-591 [11 Cal.Rptr.2d 817].)

"From virtually the outset of the provision's enactment, many cases have construed section 1157 as prescribing an inflexible rule, which often requires a court to reduce the degree of a crime in the face of clear and reliable evidence that the jury must have actually found the defendant guilty of the higher degree offense. Thus, for example, even where the jury's verdict sustaining an allegation that the defendant was armed with a deadly weapon necessarily demonstrated that it intended to convict the defendant of first rather than second degree robbery (see *People* v. *Doran* (1972) 24 Cal.App.3d 316, 321-322 [100 Cal.Rptr. 886]; *People* v. *De Arkland* (1968) 262 Cal.App.2d 802, 818-819 [69 Cal.Rptr. 144]), this court, in *People* v. *Beamon* (1973) 8 Cal.3d 625, 629 [105 Cal.Rptr. 681, 504 P.2d 905], footnote 2, concluded that section 1157 prohibited a court from giving effect to that logical inference and disapproved the Court of Appeal decisions in *Doran*, *supra*, and *De Arkland*, *supra*, which had upheld first degree robbery convictions under such circumstances. In *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011], this court similarly declined to find the jury impliedly decided the degree of the murder where it failed to expressly specify degree, even though it also sustained a robbery-murder special-circumstance allegation and was instructed not to address the special circumstance allegation unless it first found the defendant guilty of first degree murder. (*Id.* at pp. 379-383.)

"This rigid application of section 1157 is clearly contrary to our present approach in dealing with the somewhat analogous situation in which a trial court improperly fails to instruct the jury on a lesser included offense. In such cases, we have held that a judgment can nonetheless be affirmed so long as we can determine that 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on another ground in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; see also *People* v. *Garrison* (1989) 47 Cal.3d 746, 789-791 [254 Cal.Rptr. 257, 765 P.2d 419] [applying *Sedeno* analysis when trial court has failed to instruct on element of an offense].)

"In light of *Sedeno*, *supra*, 10 Cal.3d 703, and its progeny, I think it is clear that this court would not interpret section 1157 in such a formalistic manner if we were approaching the issue today as a matter of first impression. We are not writing on a clean slate, however, because the judicial interpretation of section 1157 noted above has been in place for many years, and the Legislature has effectively acquiesced in that interpretation by its inaction. If the rigidity of section 1157 is to be modified, I believe at this

point the initiative must appropriately come from the Legislature." (*People v. Bonillas, supra*, 48 Cal.3d at pp. 802-804 (conc. opn. of Arguelles, J.), fns. omitted.)

Until the Legislature acts, the trial courts and prosecutors must take care to assure that verdict forms accurately set forth all of the findings necessary to resolve a case.

*The purported error in instructing the jury on flight.*

 The contention that it was reversible error to instruct the jury on flight is without merit. In relevant part, the jury was instructed, "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." It was for the jury to determine whether flight occurred and at what point it commenced. Here, the instruction "left it to the jury to determine whether there had been flight. The instruction assumes neither the guilt of the accused nor that flight occurred." (*People v. Campos* (1982) 131 Cal.App.3d 894, 900 [182 Cal.Rptr. 698]; see *People v. Pensinger* (1991) 52 Cal.3d 1210, 1243-1245 [278 Cal.Rptr. 640, 805 P.2d 899].)

*Complaints about the calculation of precommitment credit should be presented to the trial court.*

Respondent's request that this court reduce the precommitment custody credit of each appellant by one day is better addressed by the trial court, after an appropriate motion in that court. (*People v. Little* (1993) 19 Cal.App.4th 449, 451-452 [23 Cal.Rptr.2d 394]; *People v. Fares* (1993) 16 Cal.App.4th 954, 956-960 [20 Cal.Rptr.2d 314].)

V

DISPOSITION

The judgments are modified to reflect convictions of second degree murder and, as modified are affirmed. The matter is remanded for resentencing.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied September 11, 1996, and the petitions of both respondent and appellants for review by the Supreme Court were denied November 20, 1996. Werdegar, J., was of the opinion that the petitions should be granted.