Filed 5/16/13  P. v. Rowland CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B240508 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054606) |
| v. | |
| NICHOLAS KELLEY ROWLAND, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carol Koppel, Judge.  Affirmed.

Bruce Zucker; Edwin Aimufua , under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Nicholas Kelley Rowland, appeals his conviction for possession of marijuana for sale and transportation of marijuana, with prior serious felony conviction and prior prison term enhancements (Health & Saf. Code, §§ 11359, 11360; Pen. Code, §§ 667, subds. (b)-(i), 667.5). Rowland was sentenced to state prison for six years.

The judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

On the afternoon of November 2, 2011, Los Angeles County Sheriff's Deputy Nathan Grimes and his partner visited the manager of an apartment complex in Lancaster to discuss recent narcotics activity there. During the visit, Grimes witnessed what "appeared to be a hand-to-hand [drug] transaction" between defendant Rowland and another person, although Grimes was too far away to see what had been exchanged. Soon after, Rowland drove off in his van.[1] Grimes and his partner left in their patrol car in order to keep an eye on him. Moments later, Rowland failed to stop at a limit line and failed to signal while changing lanes, so Grimes made a traffic stop.

When Grimes approached the van, he noticed a strong odor of marijuana. He ordered Rowland to exit and asked if he had anything illegal. Rowland said he had marijuana and consented to a search. Inside his pocket, Rowland had a container of marijuana. He also had $450 in one pocket and $51 in a second pocket. There was a cell phone on the driver's seat. There was marijuana in a plastic container under the driver's

---

[1]     In Rowland's van there was a passenger, but it was not the person who had been seen exchanging something with him. Rowland does not claim the marijuana found in his van belonged to this passenger.

seat, and more marijuana inside the glove compartment. In all, Rowland had slightly more than 24 grams of marijuana.[2]

In the rear of the van, behind a panel where the tire jack is usually stored, Grimes found a leather pouch containing a digital scale and "numerous empty plastic packaging bags" which "looked like sandwich bags" There was marijuana residue on the scale. There was no paraphernalia in the van of the kind generally used for smoking marijuana, such as a pipe or rolling papers. Grimes testified he did not believe Rowland was under the influence of marijuana.

The cell phone contained various text messages which Grimes testified were indicative of drug trafficking. In one, someone told Rowland he needed an "amp," which could have been a reference to "an upper." Rowland responded by asking what quantity the person wanted. In another text, someone wrote to Rowland: "I'm back home now but I'm sure I'll be back out there soon," and "You got pills?" Grimes interpreted this as someone "asking the defendant if he can buy some pills from him." Another incoming text message said, "Come on. What has worth is worth paying for. The bag you gave me I sold for 20. 20 more and I'm still taking a loss." Grimes characterized this as part of "a conversation between two people" in which "[o]ne is saying he gave this person some marijuana and he tried to sell it for $20." In another text message, Rowland said he had "six skkittlez," which Grimes testified referred to "six ecstasy pills" Rowland was offering to sell.

Rowland told Grimes he had a medical marijuana prescription card which allowed him to carry up to eight ounces of marijuana on his person. Grimes looked for the marijuana card, but he did not find it in Rowland's wallet or in the van.

Grimes testified he worked for a special task force, the Lancaster Community Appreciation Project (LANCAP): "We work at apartments that are littered with crime, gangs, narcotic dealers. Any other problems it might have." The area where Rowland

---

[2]      There are 28.35 grams to the ounce.

was arrested "is known for a lot of narcotic sales and gang activity." "Q. So LANCAP is to suppress all that? [¶] A. That's partially what we do, yes."

Grimes explained his reasons for concluding the marijuana recovered from Rowland and his van had been possessed for sale: "Based on the amount, I believe it's more than personal use. The digital scale, which drug dealers often use to weigh out their narcotics before they sell it. The empty packaging material they had next to the scale. The residue on the scale. He didn't appear to be under the influence of marijuana at the time. The money that he had on him was separated in two different pockets. That's common for what drug dealers do. . . . The text messages that were on his phone."

2. *Defense evidence.*

Rowland's mother testified she had given him $500 to help pay the rent on a new apartment. She explained Rowland received general assistance relief in the amount of $221 per month, and that she gave him $500 a month for rent and paid his utilities.

Rowland testified in his own defense. He presented a medical marijuana card which authorized him to possess up to eight ounces of marijuana. He said he used marijuana to alleviate pain stemming from an old gunshot injury to his leg. He purchased the marijuana in large quantities as a way to save money and he used the scale to measure out his daily dosages. He did not sell marijuana. He had been at the apartment complex that day to look at a new place he might rent. The text message referring to "amp" was actually a reference to a stereo amplifier someone wanted to buy from him; Rowland testified he installs car stereo systems for people.

## CONTENTIONS

1. The trial court erred by allowing the prosecutor to ask Rowland if he were affiliated with a gang.

2. The trial court erred by excluding evidence of a police report prepared by Deputy Grimes.

4

# DISCUSSION

1. *The gang question does not warrant reversing Rowland's convictions.*

Rowland contends his convictions must be reversed because, in violation of Evidence Code section 1101, the trial court allowed the prosecutor to ask about his purported gang membership. This claim is meritless.

a. *Background.*

During the prosecutor's cross-examination of Rowland, the following colloquy occurred:

"Q. . . . [Y]ou are a documented gang member, aren't you?

"A. [Defense counsel]: Objection.

"The defendant: No.

"The Court: The objection is overruled. [¶] You may answer. [¶] He said no.

. . . . . . . . . . . . . . .

"Q. Don't you have a tattoo on you that . . . has a picture of a man's face with LTH in . . . . quotes . . . .

"A. Yes.

"Q. What does the LTH stand for?

"A. Love, trust and honor.

"Q. Not Little Town Hustler?

"A. No.

"Q. Isn't it true that you have admitted to gang detectives in the past that you belong to an [*sic*] 83rd Street Gangster Crip?

"A. No."

b. *Discussion.*

The admission of other crimes evidence is governed by Evidence Code section 1101. "Subdivision (a) of section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit

5

admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393, fn. omitted.) Hence, "[a]lthough evidence of prior offenses may not be introduced solely to prove criminal disposition or propensity such evidence may properly be admitted whenever it tends logically, naturally, and by reasonable inference to establish any fact material for the People or to overcome any material matter sought to be proved by the defense." (*People v. Montalvo* (1971) 4 Cal.3d 328, 331-332.)

Rowland contends the prosecutor's questions violated Evidence Code section 1101's prohibition of character evidence to prove conduct on a specific occasion. He argues: "[F]irst, the prosecutor offered no evidence whatsoever that the allegations against appellant in the charging instrument were street gang related. Second, the prosecutor offered no evidence or offer of proof to the court whatsoever . . . to support the allegation that appellant's tattoo was gang related or that he made a prior admission. Third, the prosecutor laid no foundation as to whether street gangs that he alluded to during cross examination of appellant either existed or, if they did, engaged in criminal activity." Rowland asserts there was prejudicial error because the trial court allowed the questions, failed to "give a limiting instruction to the jury to ignore the prosecutor's implications," and the jury was "not informed that it should not rely upon the statements as substantive evidence." We disagree.

The mere fact Rowland was not charged with a gang-related enhancement does not mean all gang evidence was necessarily inadmissible. "In cases *not* involving the gang enhancement, we have held that evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal [Citation.] But *evidence of gang membership is often relevant to, and admissible regarding, the charged offense*. Evidence of the defendant's gang affiliation . . . can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.]" (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049, italics added; see *People v. Avitia* (2005) 127 Cal.App.4th 185, 192 ["[g]ang evidence is admissible if it is logically relevant to some material issue in the case other

6

than character evidence"]; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1369 ["[e]vidence of gang activity and affiliation is admissible where it is relevant to issues of motive and intent"].) This entire case turned on Rowland's intent with regard to the marijuana found in his possession.

Although Rowland complains "the prosecutor asked accusatory questions that specifically attempted to illicit [*sic*] whether appellant was a member of an alleged street gang," the Attorney General rightly points out that, in response, Rowland *denied* any gang affiliation. Because an attorney's questions at trial do not constitute evidence (*People v. Gonzales* (2011) 51 Cal.4th 894, 921), no evidence that Rowland was gang-affiliated was ever actually admitted. Moreover, the jury was specifically guided by the following instruction: "Nothing that the attorneys say is evidence. . . . Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' question[s] are significant only if they helped you to understand the witnesses' answers. *Do not assume that something is true just because one of the attorneys asked a question that suggested it was true*." (Italics added.) We presume jurors are capable of understanding the jury instructions and applying them to the facts of the case. (*People v. Carey* (2007) 41 Cal.4th 109, 130.) Rowland has not cited any authority in support of his claim Evidence Code section 1101 was violated merely because the prosecutor asked these questions.

Nor are we persuaded by Rowland's implication that the prosecutor was acting in bad faith by inquiring about gang affiliation. The evidence showed Deputy Grimes was part of a special task force investigating gang activity and drug dealing at apartment complexes. Grimes also testified the area where Rowland was arrested had a reputation for "a lot of narcotic sales and gang activity." It appears the prosecutor's questioning was more than just a fishing expedition: he asked if Rowland's tattoo had a very specific meaning, and whether Rowland had not admitted to police his membership in a particular gang.

In any event, we conclude that, even assuming arguendo there was error here, it was harmless. (See *People* v. *Malone* (1988) 47 Cal.3d 1, 22 [error in admitting improper character evidence tested by *Watson*[3] harmless error standard]; *People* v. *Escobar* (1996) 48 Cal.App.4th 999, 1025, disapproved on other grounds in *People v. Mendoza* (2000) 23 Cal.4th 896, 923-925 [erroneous admission of character evidence tested by *Watson*].) The evidence against Rowland was overwhelming. Although he was not carrying an exceptionally large amount of marijuana, many of the standard indicators of drug trafficking were present: a hidden scale and packaging materials; lots of cash; text messages referring to drug transactions; the lack of any equipment for personal consumption of the marijuana; and, an apparent hand-to-hand drug transaction.

In light of such strong evidence showing Rowland possessed the marijuana for purposes of sale, the prosecutor's few and fleeting questions about his possible gang membership were not prejudicial.

2. *Police report was properly excluded from evidence.*

Rowland contends his convictions must be reversed because the trial court excluded from evidence a police report, prepared by Deputy Grimes, describing the circumstances of the traffic stop. This claim is meritless.

a. *Background*.

During defense counsel's cross-examination of Grimes, the following colloquy occurred:

"Q. Do you recall the police report that you wrote, that you were going westbound on Lancaster Boulevard when you first observed my client?

"A Yes."

Grimes explained the circumstances of the traffic stop:

"A. [W]hen we left the [apartment] complex, we didn't want [Rowland] to think we were on to him. There is a long frontage road that goes eastbound. . . . [¶] . . . [¶] . . .

---

[3]     *People v. Watson* (1956) 46 Cal.2d 818.

along Lancaster Boulevard. And we took a right-hand turn and he took a right-hand turn and we continued westbound, and he ended up not making a complete stop.

"Q. He was going which direction?

"A. He was . . . facing northbound and then he took a right. So he went eastbound on Lancaster Boulevard and when we saw him –

"Q. You were going westbound on Lancaster Boulevard?

"A. Yes.

"Q. You were approaching each other like this?

"A. No. We were going away from him because . . . if he saw us and realized we were on to him, he probably would have made a U-turn and tried to evade us."

Later, Grimes reiterated that Rowland had been driving east on Lancaster Boulevard:

"Q. So [Rowland] went down the frontage side road, turned left and he was at Roden?

"A. Yes.

"Q. He was traveling eastbound on Lancaster.

"A. When he took that right from Roden, he was traveling eastbound, yes."

Defense counsel subsequently told the trial court he wanted to have the police report admitted into evidence in order to demonstrate Grimes had lied:

"The Court: What part of it is a lie?

"[Defense counsel]: The first part.

"The Court: Traveling westbound. Failed to stop.

"[The prosecutor]: That didn't happen? I'm sorry.

"[Defense counsel]: Yes, that did not happen"

The trial court refused to admit the report because "it's hearsay and I don't think it is appropriate."

9

b. *Discussion*.

Rowland argues this evidence was admissible to show Grimes had "lied when he testified on direct and cross-examination. The police report stated that Deputy Grimes stopped appellant when he was traveling westbound on Lancaster Boulevard and failed to stop as required. Appellant sought to show this statement contradicted Deputy Grimes' testimony that appellant was facing northbound and then turned right, facing eastbound on Lancaster Boulevard." But Rowland's assertion the police report had him driving westbound on Lancaster Boulevard is contradicted by the only evidence in the record reflecting what the report actually said.

What we know about the police report is contained in the following statement by the trial court: "The Court [reading from the police report]: '*While we were traveling westbound* just east of 5th Street East *in our marked patrol vehicle*' he observed a white Mazda van failing to stop." (Italics added.) This indicates that according to the police report it was Grimes, not Rowland, who was going west, which was entirely consistent with Grimes's trial testimony. In support of his alternative interpretation, Rowland has merely cited a portion of defense counsel's argument, at the trial court hearing, giving *defense counsel's* opinion about what the police report said.

At trial, Grimes testified that when he observed the traffic infractions his patrol car had been going west, Rowland had been going east, and they were driving away from each other. Hence, it appears the police report did not contradict Grimes's testimony and, therefore, the report was properly excluded from evidence.[4]

_____

[4]     We review the trial court's ruling, not its reasoning, and we affirm if that ruling was correct on any ground. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [" ' "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason. If right upon any theory of law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' "].)

10

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.