[No. A053697. First Dist., Div. Three. Mar. 31, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED JOHN FELIX et al., Defendants and Appellants.

### COUNSEL

Robert D. Platt and Thomas Lundy, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joanne S. Abelson and Christina V. Kuo, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**WERDEGAR, J.**—Fred John Felix and David Walter Pedrico were each convicted of four counts of robbery (Pen. Code, § 211)[1] and three counts of false imprisonment (§ 236). Felix was found to have personally used a firearm in three of the robberies. All the charges arose from the armed robbery of a supermarket by two men. The defense for both defendants was misidentification, and neither testified. Over defense objection, evidence was admitted that defendants had pled guilty to robbery of a restaurant, committed together before the charged crimes. We conclude admission of this prior crime was error, but was prejudicial only as to Pedrico.

### FACTS

About 7 p.m. on November 9, 1989, two men entered the office of a Lucky's supermarket. The larger of the two was carrying a rifle or shotgun.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

They led two store employees, Elizabeth Taber and Thomas Wolf, to the checkout area. Threatening use of the gun, they took money from various registers, including those being operated by Joseph Kane, Tanya Garrison and Justin Summer. The robbers took the money, ordered everyone to the back of the store and left.

Taber, Wolf and Kane testified. All three identified Felix as the larger robber. Wolf described himself as "just about certain" of his identification of Felix. All three had also identified Felix at the preliminary hearing. Wolf admitted that when he first saw Felix at the preliminary hearing he was not as sure of his identification as he became later. Taber and Kane had also identified Felix as the larger robber in photographic lineups, but in his photo lineup Wolf had not selected anyone as the larger robber.

At trial, Wolf and Kane identified Pedrico as the smaller of the two robbers. Taber was unable to do so, although she said he was of "similar stature and size" to the smaller robber. She also did not identify Pedrico at the preliminary hearing, saying he did not look "familiar" and did not "resemble" the smaller robber. She stated: "That's the only thing that's similar is he is smaller. I didn't really look at his face, so any other features I didn't notice except for that he was smaller." Taber also did not select anyone as the smaller robber in the photographic lineup. Wolf had identified Pedrico at both the preliminary hearing and the photographic lineup, noting on his response form at the latter that he was "almost certain" of his identification.

Kane selected Pedrico from the photographic array, but did not identify him at the preliminary hearing. When he was first shown Pedrico at the hearing, Kane said, "No, I don't think that's him." A few minutes later, after further questioning, he was asked if that was still his opinion and said it was. At another point in the preliminary hearing, however, Kane said he had a "gut feeling" Pedrico was the robber and there were some physical similarities, but he did not want to put the wrong man behind bars.

Martin Blinder, a psychiatrist, testified for the defense as an expert on eyewitness identification. In addition to outlining the factors affecting reliability of eyewitness identification in general, Dr. Blinder also answered hypothetical questions based on the testimony of Taber, Wolf and Kane, explaining factors tending to increase and decrease the reliability of the identifications. Supporting the identifications were: the physical conditions, such as lighting, proximity and duration, were generally sufficient to allow for observation of the robbers' appearance; and Taber consciously tried to fix the larger robber's image in her mind and candidly admitted she could

not identify the smaller robber. Raising questions about reliability were: the witnesses were frightened and angry during the crime and might have focused on the gun rather than the robbers' features; both Kane and Wolf showed some signs of increasing certainty over time; and there was a significant time gap between the crime and the first identifications (the photographic lineups).

## The Prior Conviction

The parties stipulated Felix and Pedrico had pled guilty to robbing two people at a Burger King restaurant on September 26, 1989, in Stanislaus County. No other prior convictions were put in evidence.

The prosecutor, by motion *in limine*, had initially sought to present evidence of seven prior robberies she intended to show defendants committed together. Five of these were robberies of Thrifty stores between October 3 and December 29, 1989; defendants had not been convicted of these crimes, but the prosecutor hoped to have witnesses identify defendants in court. The sixth was the robbery of a Burger King in Manteca (San Joaquin County) on January 25, 1990, to which defendants had pled guilty. The seventh, added the morning of the *in limine* hearing, was of a Lucky's store in Davis, which would be proven through witnesses.

The prosecutor conceded there were no similarities between the charged crime and the Manteca Burger King robbery other than both defendants had committed the earlier crime together; the Burger King robbery was "evidence of the association of these two defendants together." The prosecutor later discovered the Stanislaus County guilty plea and added it to the priors she sought to prove. The prosecutor did not present any details of the Stanislaus County Burger King robbery, nor did she suggest it was similar to the charged crime in any way other than the participation of both defendants.

The defense objected to evidence of any uncharged robberies as irrelevant, as inadmissible character evidence (Evid. Code, § 1101) and as more prejudicial than probative (Evid. Code, § 352). The court ruled the first, second and sixth priors presented by the prosecution admissible over these objections, finding their probative value outweighed their prejudicial effect. The court said the prosecutor could, upon making a further offer of proof, use the Stanislaus County Burger King plea instead of that in Manteca (prior No. six).

Counsel for Pedrico (Ms. O'Connor) pointed out there had been no showing the Manteca prior was similar to the charged crime. The court

stated it was allowing evidence on the Stanislaus County prior because it showed defendants had been together and, hence, tended to prove identity. There ensued the following discussion:

"Ms. O'Connor: The fact that they—I mean, supposing somebody wants to—has for ten years held season tickets together at the 49'ers games so they know each other. I'm prepared to stipulate they know each other.

"The Court: That would be admissible, too.

"Ms. O'Connor: I'm prepared to stipulate they know each other.

"Ms. Kamena [the prosecutor]: I think that would take away from the—I don't think that's—that's not the idea of the evidence. The idea is that they know each other. Their association that they do robberies together. That's the identity. And that's my point. That shows a propensity to rob in concert.

"The Court: I realize that. So do all these other instances—

"Ms. O'Connor: Well—

"The Court: Anyway, that's the ruling."

The court later reiterated it was admitting the Stanislaus County prior only to show identity, in that defendants had committed a robbery together in the past.

The jury was instructed the prior conviction "was not received and may not be considered by you to prove that either defendant is a person of bad character, that either has a disposition to commit crimes or any particular crime or that the defendants have a disposition to commit crimes or any particular crime separately or together. Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show the identity of the person or persons who committed the crimes which these defendants are accused in this case. You are not permitted to consider for any other purpose the evidence admitted for this limited purpose."

The prosecutor also cautioned the jury against considering the prior as showing defendants were bad people or robbers. She continued: "The reason why that evidence is in is for one sole purpose and that is to prove that there is an association between the two defendants to use as a link in determining their identity, okay? [¶] Now, the example that I use is as follows: If perhaps

you are absolutely certain that Mr. Felix is the big guy and there's no question in your mind that you have kind of a little lingering, 'Well, I wonder if it is or was it Mr. Pedrico,' you can use it along this line of theory and my favorite example is the Lone Ranger. [¶] If you hear that a masked man on a white horse comes riding out of town and he's with an Indian on a Pinto and you learn that the guy on the white horse with the mask is the Lone Ranger and you see him coming back in town a couple weeks later, you know, wouldn't you infer that the Indian who was with him was Tonto. Okay. If you knew he was Tonto before and that what's called circumstantial evidence that I was talking to you about earlier. You know, one was bigger, one was smaller. One was younger, one was older. So if you come to the opinion that Mr. Felix is one, you may circumstantially infer that perhaps the one with him who fits the description to enhance that direct evidence of the identification was Mr. Pedrico."

Counsel for Pedrico emphasized the prior was not to be used to show a disposition to commit crimes "together or singly . . . ." She told the jury: "The fact that it was a robbery case in which they were associates has no bearing on this case. [¶] The D.A. could have just as easily proved that they had season tickets to the 49ers in 1989 together to prove their association and you all said you would follow the law and I'm sure you will on that issue."

DISCUSSION

### I. *Admission of the Prior Robbery Conviction*

██ "Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity. [Citations.] The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. [Citations.] When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant. [Citation.] Because this type of evidence can be so damaging, '[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded.' [Citation.]" (*People* v. *Daniels* (1991) 52 Cal.3d 815, 856 [277 Cal.Rptr. 122, 802 P.2d 906].)

██ Evidence of prior offenses is not admissible simply as character evidence, i.e., to show a propensity to commit crimes in general or a

particular class of crimes. (Evid. Code, § 1101, subd. (a); *People* v. *Alcala* (1984) 36 Cal.3d 604, 631 [205 Cal.Rptr. 775, 685 P.2d 1126]; see *People* v. *Scott* (1987) 194 Cal.App.3d 550, 552-556 [239 Cal.Rptr. 588] [Evid. Code § 1101 not abrogated by Cal. Const., art. I, § 28, subd. (d)].)

Defendants' Stanislaus County plea was offered and introduced here only to prove identity, which was certainly a material fact in dispute; indeed, the identity of the robbers was the primary question disputed by the parties and put to the jury. We must decide whether the prior offense was probative of identity and whether any probative value was outweighed by its improper, prejudicial impact as character evidence.

Past crimes are probative of identity when they share with the charged offense a set of distinctive marks. A modus operandi or criminal signature, creating an inference of identity, is demonstrated " 'when the marks common to the charged and uncharged offenses, considered singly or in combination, logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses.' . . . [Citation.]" (*People* v. *Thornton* (1974) 11 Cal.3d 738, 756 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Haston* (1968) 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 91]; see also *People* v. *Alcala, supra,* 36 Cal.3d at p. 632.)

The prosecutor conceded the Stanislaus County Burger King robbery, like the one presented earlier from San Joaquin County, bore no distinctive marks in common with the charged supermarket robbery other than the association of the two defendants. No details of the prior crime were put before the court, and the court relied on no distinctive features in ruling it admissible.

The fact that both crimes were committed by two men is grossly insufficient as a criminal signature. Innumerable crimes, indeed innumerable robberies, are committed in concert by two men; that single mark completely fails to "set the charged and uncharged offenses apart from other crimes of the same general variety . . . ." (*People* v. *Thornton, supra,* 11 Cal.3d at p. 756.)

We need not be detained long by the theory of admissibility the prosecutor urged on the court, that the prior conviction showed the defendants' "propensity to rob in concert." A propensity to rob is precisely the kind of character trait that may not be proven under Evidence Code section 1101,

and "in concert," as just discussed, adds too little distinctiveness to qualify as a criminal signature.

Nor was the prior admissible on the theory the prosecutor suggested to the jury: that, taking Felix's guilt as given, it tended to show Pedrico was his companion. In *People* v. *Haston, supra,* 69 Cal.2d at pages 247-250, the court did employ similar reasoning. In *Haston,* however, one member of the prior criminal team had pled guilty to the charged offense. (*Id.* at p. 238.) The charged and uncharged crimes, in addition, bore other marks of similarity that, although insufficient in themselves to establish a modus operandi, were deemed sufficiently distinct when combined with the admitted participation of the defendant's previous partner in crime, which the court treated simply as one additional "common mark." (*Id.* at p. 249.) Here, of course, neither defendant admitted participation; nor was the jury instructed to determine Felix's guilt without considering the prior or to consider the prior against Pedrico only if it found Felix guilty on other evidence.

Finally, the discussion between court and counsel indicated the court may have believed the evidence probative simply to show defendants were acquainted with one another. ██ ██ Given that evidence of prior acquaintance was relevant, the question is whether the court abused its discretion in weighing the probative value against the potential prejudice inherent in this particular form of such evidence, a joint prior conviction of robbery.

In this case, prior acquaintance had only the slightest tendency in reason to show joint commission of the robbery. No special issue had been made of acquaintance; neither defendant, for example, had denied knowing the other. Indeed, defense counsel had offered to stipulate to their prior acquaintance. Evidence that they did know each other may have ruled out any contrary claim by the defense, but it did little to meet the prosecution's affirmative burden of proof beyond a reasonable doubt. The inference to be drawn, that because defendants previously knew each other they likely committed the charged crime together, was weak and remote.

The potential for improper and prejudicial impact, in contrast, was strong and clear. Neither defendant testified, and the jury knew virtually nothing about them other than their appearance and their prior conviction for robbery. Not only was the prior conviction susceptible of use as character evidence, it was the only evidence bearing on defendants' character introduced. The jury in this robbery trial was told only one salient fact about these defendants: they were admitted robbers. The danger the jury would reason, "if they did it once, they probably did it again" was too great to

justify admission of a prior conviction so weakly probative of identity or any other disputed issue. (See *People* v. *Daniels, supra,* 52 Cal.3d at p. 856 [prior crime should be excluded if its probative value not clear]; *People* v. *Alcala, supra,* 36 Cal.3d at p. 631 [other crimes evidence to be examined with care and all doubts about probativeness to be resolved in favor of the accused].)

None of the cases relied upon by the Attorney General suggests a different conclusion. In *People* v. *Gordon* (1990) 50 Cal.3d 1223 [270 Cal.Rptr. 451, 792 P.2d 251], there was evidence connecting defendant and his brothers to a robbery-murder at a Kmart store in Stockton (the charged crime) and to a prior robbery-murder at a Riverside Kmart (uncharged). The two crimes were committed in a virtually identical manner, as emphasized by the parallel phrasing with which the Supreme Court stated the facts of the two offenses. (*Id.* at pp. 1234-1235.) In holding evidence of the uncharged Riverside incident admissible, the Supreme Court simply agreed with the trial court's finding the two offenses had in common " 'a sufficiently distinctive combination of circumstances . . . .' " (*Id.* at pp. 1239-1240.) As already discussed, no such distinctive combination of circumstances was presented to the court here to support use of the uncharged offense.

In *People* v. *Daniels, supra,* 52 Cal.3d 815, after the defendant's conviction for an earlier robbery was final, he was accused of murdering two police officers who had come to take him to prison for the robbery. During the robbery, other police officers had shot the defendant as he tried to escape, causing him permanent disability. (*Id.* at p. 837.) The Supreme Court held the trial court did not abuse its discretion in admitting evidence of the prior robbery because there was a "direct relationship" between the earlier events and the charged offense; indeed, the defendant's injury in the robbery escape attempt was crucial to the prosecution's showing of motive, which, in turn, tended to show both intent and identity. (*Id.* at pp. 857-858; see also *People* v. *Douglas* (1990) 50 Cal.3d 468, 509-511 [268 Cal.Rptr. 126, 788 P.2d 640] [evidence defendant engaged witness in nude bondage photography session and tried to enlist her in using other women to make "snuff" film involving bondage held admissible to show defendant's identity as person who killed two women recruited for bondage photography session].) In the case at bar, no comparable connection between the charged and uncharged offenses was shown. Defendants' plea in Stanislaus County tended neither to show motive for the charged robbery, as in *Daniels,* nor an earlier admission of intent to commit the charged crime, as in *Douglas.*

## II.  *Prejudice*

Erroneous admission of other crimes evidence is prejudicial if it appears reasonably probable that, absent the error, a result more favorable to

the defendant would have been reached. (*People* v. *Alcala, supra,* 36 Cal.3d at p. 636; *People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].) ██ ██ We conclude a more favorable result was reasonably probable as to Pedrico, but not as to Felix.

██ Felix was identified at trial and at the preliminary hearing by each of the three testifying eyewitnesses. Two of them also identified him from the photographic lineups. Felix presented no defense beyond Dr. Blinder's testimony as to factors that might raise questions regarding the identifications. This expert testimony was not of such impact as to make the jury likely to reject three independent courtroom identifications and two identifications from photographic lineups. Finally, the prosecutor did not suggest the prior conviction could be used against Felix in any manner. It is not reasonably likely the other crimes evidence influenced the jury's conviction of Felix.

██ The evidence against Pedrico was significantly weaker and the use of the prior conviction correspondingly more important. One of the eyewitnesses, Taber, was completely unable to identify Pedrico. Another, Kane, said at the preliminary hearing he did not think Pedrico was the smaller robber.

Although Wolf identified Pedrico on all three occasions, his testimony regarding his opportunity to observe Pedrico conflicted somewhat with his own preliminary hearing testimony and with the trial testimony of the other eyewitnesses. At trial, Wolf testified he had two opportunities to look at Pedrico: first, he looked at each robber for a few seconds when both entered the office; second, after accompanying the larger robber to Kane's register, he saw the smaller robber standing by one of the store's side doors. At the preliminary hearing, however, Wolf testified he was unable to see the smaller robber well in the office and got a good look at him only later, when the robber was standing by the side door. Taber, moreover, never saw the smaller robber by the side doors; although she was with the larger robber, she was aware generally that the smaller robber was going from register to register with Kane. Kane, in turn, testified the smaller robber was with him continuously from the time he came to Kane's register until the robbers ordered everyone to the back of the store and left; he never saw the smaller robber go to the side doors. The jury was reasonably likely to have doubts about both Kane's and Wolf's identification of Pedrico.

Finally, the prosecutor, in argument, directly urged the jury to use the prior conviction against Pedrico. Recognizing the identification evidence against Pedrico was weaker than against his codefendant, the prosecutor

suggested the jury, if certain Felix was the larger robber but uncertain whether Pedrico was the smaller, should infer from their prior association that he was.

Although the jury was instructed to consider the prior conviction only as to identity and not as character evidence, the instruction did not explain how the evidence might tend to show identity. As apparent from our discussion of the merits, a proper use of this evidence to show identity tends to elude reason. In these circumstances, the limiting instruction was likely to be of little value.

In light of the relative weakness of the Pedrico identifications and the explicit suggestion for consideration of the prior conviction against him, we conclude it is reasonably likely the jury verdict against Pedrico was influenced by that prior conviction and would have been more favorable without it.

### III.  *Instruction on Eyewitness Identification Factors*

The trial court gave defendants' proposed instruction on reliability of eyewitness identification (a modified version of CALJIC No. 2.92), but deleted two proposed factors: use of a weapon during the offense, and age differences between the witnesses and the perpetrators. ■ We need not decide if the deletion of these two factors was error because any such error was not prejudicial.[2] The instruction as given noted the factors bearing on reliability were "not limited" to those listed. The defense expert testified to the possible influence of a weapon and of an age differential, and both factors were employed in the defense argument along with those listed in the instruction. It is not reasonably probable the absence of these two factors from the instruction influenced the verdicts against either defendant.

### DISPOSITION

The judgment against appellant Felix is affirmed. The judgment against appellant Pedrico is reversed.

Merrill, Acting P. J., and Chin, J., concurred.

The petitions of both respondent and appellants for review by the Supreme Court were denied July 1, 1993. Kennard, J., and Baxter, J., were of the opinion that the petitions should be granted.

---

[2]The deleted factors were arguably supported by the evidence. A firearm was used in the robbery, and both defendants were older than the three eyewitnesses (at the time of the robbery, Pedrico was 53 or 54, Felix, 44 or 45, Taber, 24, Wolf, 20, and Kane, 19).