Filed 7/17/14  P. v. Weakley CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057293 |
| v. | (Super.Ct.No. SWF1200257) |
| SAMMY YOUNG WEAKLEY, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard, Judge.

Affirmed with directions.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson, Lynne G.

McGinnis, and Kate Kirschbaum, Deputy Attorneys General, for Plaintiff and

Respondent.

Defendant Sammy Young Weakley entered a Walmart store in San Jacinto with his pregnant girlfriend, Chante Park, and another friend. Each of them placed items in a shopping cart and Park placed some of these items in a bag. The three left the store together without paying for the items Park secreted in the bag. Once outside the store, they were confronted by Walmart security guards. Defendant sprayed tear gas in their faces.

Defendant was convicted by a Riverside County jury of two counts of robbery (Pen. Code, § 211; counts 1 & 2); assault with a caustic chemical (§ 244; count 3); unlawful use of tear gas (§ 22810, subd. (g); count 4); possession of tear gas by a felon (§ 22810, subd. (a); count 5)[1]; and two counts of simple assault (§ 240; counts 6 & 7). After waiving his right to a jury trial, in a bifurcated proceeding he admitted he had served seven prior prison terms (§ 667.5, subd. (b)). Defendant was sentenced to state prison for nine years.[2]

Defendant now contends on appeal as follows:

1.      The trial court erred and violated his federal and state constitutional rights by refusing to dismiss a juror who committed misconduct.

---

[1]      The parties stipulated that defendant had a prior felony conviction.
[2]      The trial court struck one of the prior prison term allegations. However, the abstract of judgment shows that the prior was stayed. The oral pronouncement of judgment prevails over any contradictory written order. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) As such, we will order the abstract of judgment be modified to exclude the prior prison term enhancement that was struck by the trial court.

2.      The trial court erroneously allowed the introduction of a prior offense committed by defendant pursuant to Evidence Code section 1101, subdivision (b).

We conclude that the trial court did not abuse its discretion by refusing to remove a juror.  Further, based on the similarity of the instant offense and the prior offense — they both involved theft at the same Walmart store — the trial court properly admitted the prior offense.  We affirm the judgment.

I

FACTUAL BACKGROUND

A.      *People's Case-in-Chief*

1.      *Current crime*

On January 19, 2012, Ronald Romanowski was working at the Walmart store in San Jacinto.  He was a loss prevention officer and was in plain clothes.  At around 9:00 a.m., he observed defendant and two women, one of whom was defendant's pregnant girlfriend, Chante Park, and their friend, Tonya Volk, enter the store.  Romanowski followed them around the store.

Park had a shopping cart in which she had an open pink and white tote bag.  Romanowski observed all three of them place several items next to the bag in the shopping cart.  Defendant was observed putting a pack of toilet paper in the cart.  Thereafter, the two women went to the infant department in the store and defendant went in another direction.  Romanowski followed Park and Volk.

While Volk and Park were in the infant department, Park transferred items from her shopping cart into the open pink and white bag.  Volk looked around while Park

3

placed the items in the bag. The two women walked to the cash register where they met with defendant.[3] Volk paid for some food items she had in a cart she was pushing. She used food stamps to pay for the items. Defendant paid for two items he had in his hand. Park put the pink and white bag over her shoulder. No one paid for the items that had been placed in the pink and white bag.

Romanowski called his supervisor, Judy Randolph. Randolph immediately went outside to the parking lot to position herself to help Romanowski. Randolph was wearing a security uniform.

Defendant, Park and Volk all exited the store together. Once they were in the parking lot, Romanowski and Randolph approached them and identified themselves as Walmart security officers. They asked them to return the items in the pink and white bag and were asked to return to the store.

Suddenly, defendant sprayed a substance in Romanowski's face. He also tried to spray the substance in Randolph's face but she was able to crouch down and was only sprayed on her shoulders and back. Romanowski felt a burning sensation in his eyes and face, which lasted several hours. He had trouble breathing and had to kneel down.

Park and Volk fled the area. Before they left, the security coordinator for Walmart, Mary Silvas, who was also in the parking lot, observed Park hand the bag to defendant. Defendant ran and threw the bag under a car. Silvas recovered the bag. The

---

[3]  The jury was shown surveillance video from the store that purportedly showed defendant at the cash register with Volk and Park. The pink and white bag was visible in the video. The parties have not asked this court to view the video and we have not transferred the video to this court on our own motion.

items in the bag included baby outfits, bandages, baby wipes, dog collar or leash, and toilet paper. They had not been paid for by any of the three persons.

Defendant was found hiding in a nearby store. Romanowski identified defendant at a field showup. A canister of a substance called "Back Off," which was commonly used as dog repellant, was found in the parking lot. Defendant admitted the can of Back Off belonged to him. He claimed he used it to control his pit bulls. According to the label on the Back Off spray, it warned that it could irritate the skin, eyes, and nose. It was considered a "tear gas" or pepper spray.

2.      *Prior offense*

On June 4, 2010, defendant and Park had entered the same Walmart store in San Jacinto. Nicholas Adams, who was the loss prevention officer on duty that day, observed them with a shopping cart in the pharmacy department. Park and defendant put several items in the cart from various departments in the store. They went to the sporting goods department and put all of the items in Park's purse. They left the store without paying for the items.

Adams apprehended defendant and Park in the parking lot and escorted them back into the store. They willingly returned to the store. Adams recovered the merchandise, which included makeup and a knife, from Park's purse. Adams contacted the sheriff's department, but after one hour, no one had responded. Adams let defendant and Park leave the store. Adams made them sign an agreement that they would not enter the Walmart store again, and if they did, they would be arrested for trespassing. Further,

5

Adams warned that if they were caught shoplifting again, the police would be called and Walmart would press charges.

II

JUROR MISCONDUCT

Defendant contends that the trial court erred and violated his federal and state constitutional rights to a trial by jury by failing to excuse a juror who he insists committed misconduct.

A.    *Additional Background*

Defense counsel advised the trial court that Park had overheard Jurors 2 and 7 conversing about the case in the hallway during a break. Park was questioned by the trial court. Park claimed she was sitting in the hallway during the break the prior afternoon and overheard Jurors 2 and 7 talking. She heard Juror 7 say to Juror 2 "'Why did he bring it to trial?'" Juror 2 laughed and said, "'I don't know.'" Park claimed she thought they then discussed opening statements. Juror 7 said something like, "We [sic] obviously knew what we [sic] were doing.'" Juror 2 responded, "'Well, is that a violent charge though?" Juror 7 responded, "'I'm not quite sure, but they knew what they were doing.'"

Park felt that Juror 7 was the more "aggressive" person in the conversation. Park stated, "He was the one that initiated the conversation. And the black guy [Juror 2], he just . . . the Caucasian guy [Juror 7] was talking and the African American guy was just kind of shaking his head more or less. When he did respond, it was in such a light whisper I could barely hear what he was saying." Jurors 2 and 7 did not express an opinion as to whether defendant was guilty.

6

The trial court first spoke with Juror 2, who he described as the "least culpable." The trial court noted that Juror 2 was a correction officer. The trial court advised Juror 2 that his conversation with Juror 7 was overheard by a person. Juror 2 did not recall saying anything about it being a violent charge. He recalled Juror 7 in passing asking him why they brought the case to trial, and Juror 2 only responded, "Well, we'll find out." Juror 2 knew he was not supposed to talk about the case.

Juror 7 was then examined and admitted that he asked Juror 2 why the case was being brought to trial and wondered why they did not just plead to the charges. Juror 7 claimed that Juror 2 responded to him and felt the same way. Juror 7 also stated that Juror 2 told him that this was a waste of time. Juror 7 insisted that he could still be impartial and fair in the case. He claimed he had not formed an opinion in the case. He admitted that the proceedings were "very boring yesterday" and he had trouble paying attention.

Defense counsel felt that Juror 2 was trying to minimize his involvement however it was not clear based on what Park had testified to that Juror 7 could form the impression that Juror 2 agreed with him. Defense counsel asked that both Jurors 2 and 7 be removed. Defense counsel had been on the fence about removing Juror 2, but after Juror 7's testimony, he felt that it was better to err on the side of caution and remove Juror 2.

The prosecutor responded that Juror 2 expressed no opinion of defendant's guilt. It appeared he just wanted to end the conversation. Juror 2 was an innocent party in the conversation. Juror 7 was completely honest about what he said to Juror 2 but he did not seem to be completely forthcoming in his expression that he could be fair and impartial.

7

It seemed as though he did not want to continue on the jury. The prosecutor was on the fence about Juror 7. It did not appear that Juror 7 was biased but was bored by the process.

The trial court ruled that it "hated" to do it but it had to release Juror 7. The trial court agreed with the prosecutor that Juror 2 got in the middle of a bad situation when he was approached by Juror 7. Park witnessed the event and observed that Juror 2 appeared to want to just get out of the situation. It was the trial court's observation that Juror 2 had not made up his mind as to defendant's guilt and could be fair and impartial.

The trial court had concerns about Juror 7 because he was discussing that defendant should have taken a plea and asked why they (who Park believed was her and defendant) insisted on a trial. Further, Juror 7 had mentioned that the trial was boring and a waste of time. The trial court did not believe Juror 7 could be fair and impartial.

Juror 7 was removed and replaced with an alternate. The trial court admonished the jurors not to discuss the case until they were in deliberations.

The trial court later clarified its ruling. It stated that Juror 7 committed misconduct and had been released for cause. It appeared to the trial court that Juror 7 had already formed an opinion that defendant was guilty. The trial court noted, "We've discussed this situation with the other witness, and as far as I can tell, there's nothing else involved."

Prior to sentencing, defense counsel stated that he wanted to preserve the juror misconduct issue for appeal and wanted to make a motion for new trial. The trial court advised defense counsel that the motion would have to be in writing. However, the trial

8

court noted that it felt comfortable with its decision to excuse only one juror because each presented very different situations. The trial court noted, "We had a very loud, outspoken, narcissistic, self-centered juror who was talking. And the other individual did the best he could to get away from it as soon as he could."

Defendant filed his own written motion for new trial. The trial court noted that it had not considered the motion because defendant was represented by counsel. Defendant agreed to keep his attorney and the motion was not heard.

B.    *Analysis*

Jurors commit misconduct when they directly violate the oaths, duties, and admonitions imposed on them. (*In re Hamilton* (1999) 20 Cal.4th 273, 294.) "Jurors are prohibited by law from discussing the case until all the evidence has been presented, the trial court instructs the jury, and the jury has retired to deliberate." (*People v. Wilson* (2008) 44 Cal.4th 758, 838.) Under section 1122, subdivision (b), jurors commit serious misconduct when they "'converse among themselves or with anyone else on any subject connected with the trial, or . . . form or express any opinion thereon until the cause is finally submitted to them.' [Citation.]" (*In re Hitchings* (1993) 6 Cal.4th 97, 118.)

"When the record shows there was juror misconduct, the defendant is afforded the benefit of a rebuttable presumption of prejudice. [Citations.] This presumption is provided as an evidentiary aid to the defendant because of the statutory bar against evidence of a juror's subjective thought processes and the reliability of external circumstances to show underlying bias. [Citations.]" (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1116-1117.) "Any presumption of prejudice is rebutted, and the

9

verdict will not be disturbed, if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no *substantial likelihood* that one or more jurors were actually biased against the defendant." (*In re Hamilton, supra,* 20 Cal.4th at p. 296.)

The California Supreme Court has explained that "[t]he standard is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' [citation] and of society's strong competing interest in the stability of criminal verdicts [citations]. It is 'virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.' [Citation.] Moreover, the jury is a 'fundamentally human' institution; the unavoidable fact that jurors bring diverse backgrounds, philosophies, and personalities into the jury room is both the strength and the weakness of the institution. [Citation.] '[T]he criminal justice system must not be rendered impotent in quest of an ever-elusive perfection. . . . [Jurors] are imbued with human frailties as well as virtues. If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias.' [Citation.]" (*In re Hamilton, supra,* 20 Cal.4th at p. 296.)

On review, "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination." (*People v. Nesler* (1997) 16 Cal.4th 561, 582.)

Here, it is not entirely clear if the trial court considered the acts of Juror 2 to be misconduct or found that the presumption of prejudice was rebutted. The jury was admonished just prior to this occurrence that they were "not to converse among yourselves or with anyone else on any subject connected with the trial or to form or express any opinion thereon until the case is finally submitted to you." Park stated that Juror 2 made one comment about whether the charge in the case was violent. Juror 2 disputed this fact but the trial court never stated it believed Juror 2's version over Park's version. If Juror 2 made this comment, it was technically a violation of section 1122 and the trial court's order not to converse among themselves prior to deliberations.

Assuming there was "technically" juror misconduct, we find no substantial likelihood that the discussions influenced the vote of Juror 2.[4] It is clear that Juror 2 did not initiate the conversation with Juror 7. Park described Juror 2 as appearing to want to disengage from the conversation. Juror 2 did not deny the conversation but emphasized he knew they were not to talk about the case and immediately terminated the discussion. No further inappropriate discussions were reported. This brief conversation did not raise a reasonable probability of prejudice.

---

[4] At oral argument, defendant requested that this court additionally consider that Juror 2 failed to report the incident to the trial court. Section 1122, subdivision (a)(5) provides that a juror "shall promptly report to the court any incident within their knowledge involving an attempt by any person to improperly influence any member of the jury." Initially, it is not entirely clear that there was a violation of this provision as Juror 2 may not have considered that Juror 7 was attempting to influence him. Also, we have found that Juror 2 was not improperly influenced by the discussion or prejudiced toward defendant. Any misconduct based on a failure to report the incident would not change this result.

11

Further, this was a single incident and involved brief statements by Juror 7 that he wondered why the case had been brought to trial. "Transitory comments of wonderment and curiosity, although misconduct, are normally innocuous, particularly when a comment stands alone without any further discussion." (*People v. Hord* (1993) 15 Cal.App.4th 711, 727-728.) Neither party expressed that he had made a determination about defendant's guilt. Moreover, the misconduct in the instant case was certainly less serious than when a juror talks to a nonparty or witness. (See *People v. Wilson, supra,* 44 Cal.4th at p. 840.)

To the extent that defendant contends that the misconduct violated his state and federal constitutional rights to a trial by twelve impartial jurors, we do not agree. "A defendant accused of a crime has a constitutional right to a trial by unbiased, impartial jurors." (*People v. Nesler, supra,* 16 Cal.4th at p. 578.) There was no demonstrated bias shown against defendant by Juror 2 based on the brief discussion between Jurors 2 and 7. Thus, defendant had a trial by a jury of twelve impartial jurors. (*Ibid*.)

Based on the foregoing, the trivial violation of the rule to not converse about the case prior to deliberations does not require reversal because no prejudice to defendant resulted. The trial court properly dismissed Juror 7, and likewise, properly determined that Juror 2 should remain on the jury.

III

EVIDENCE CODE SECTION 1101, SUBDIVISION (b)

Defendant contends that his prior offense, committed at the same Walmart store, should not have been admitted under Evidence Code section 1101, subdivision (b). He

12

claims that the prior offense did not show a common scheme or plan and was not properly admitted to show his intent.[5]

A. *Additional Factual Background*

Prior to trial, the People filed a motion to admit a prior bad act committed by defendant pursuant to Evidence Code section 1101, subdivision (b). The People made an offer of proof that on June 4, 2010, defendant and Park entered the same Walmart store in San Jacinto. They secreted items in Park's purse and left the store without paying for them. They were stopped by two security officers and escorted back into the store. The stolen items were recovered from Park's purse. They were released but both Park and defendant signed an agreement not to enter the Walmart store again or be subject to a charge of trespass. The People sought admission of the prior offense in order to show defendant's intent, assuming defendant claimed he did not aid and abet Park in the instant robbery from the store. The People also contended it was not unduly prejudicial under Evidence Code section 352.

A hearing was conducted. Defense counsel sought to distinguish the two events by arguing that defendant was not present when Park secreted the items in her bag during the instant case. Further, defendant argued the prior offense was more prejudicial than probative. The prosecutor responded that defendant had put items in Park's cart and was with her at the register when she did not pay for those items.

---

[5]     The evidence of the prior act was admitted solely in regards to counts 1 and 2, the robbery counts. Since defendant does not argue otherwise, we presume that he is only arguing that the evidence prejudiced his prosecution for the robberies.

The trial court found the prior offense admissible. Defendant immediately sprayed the two Walmart security officers when confronted. Further, there were items that defendant gave to Park that were secreted in the bag but not paid for at the cash register. The trial court ruled, "So there's a good chance and inference that [defendant] knew that he was not paying for all of the items that had been removed and were being taken out of the store. [¶] I do believe that this would be a - - there is enough similarity to allow the June 4th, 2010, event to come in pursuant to 1101(b)." It rejected that the prior offense was more prejudicial than probative.

During discussion of the instructions, defense counsel argued the prior offense only went to show intent. The prosecutor disagreed. The trial court agreed it had admitted the evidence to show intent and lack of mistake and knowledge. It would instruct the jury as to those theories. The prosecutor further argued that it was relevant to show common plan and scheme. Defense counsel argued that the greatest degree of similarity was required in order to show common design or plan. The trial court found the evidence was appropriate to consider for intent and common plan and scheme.

The trial court instructed the jury as follows: "The People presented evidence of other behavior by the defendant that was not charged in this case and that was that the defendant committed theft of Walmart on June 4th, 2010. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense. [¶] Proof by preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not

14

that the fact is true.  If the People have not met this burden, you must disregard this evidence entirely.  [¶]  If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether the defendant was the person who committed the offenses alleged in this case:  [¶]  1.  The defendant acted with the intent to permanently deprive Walmart of the personal property in this case; [¶]  2.  The defendant had a plan or scheme to commit the offenses alleged in this case.  [¶]  In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses.  Do not consider this evidence for any other purpose except for the limited purpose of intent and common plan or scheme.[6]  [¶]  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient, by itself, to prove that the defendant is guilty of Counts 1 and 2.  The People must still prove each charge beyond a reasonable doubt."

B.     *Analysis*

Evidence of the defendant's other crimes or misconduct is inadmissible when it is offered to show the defendant had the criminal propensity to commit the charged crime. (Evid. Code, § 1101, subd. (a).)  However, prior acts evidence may be admitted when relevant to prove some other fact, such as knowledge or common plan.  (§ 1101, subd. (b); see *People v. Ewoldt* (1994) 7 Cal.4th 380, 393-403 (*Ewoldt*).)  If the evidence is

---

[6]     Defendant on appeal claims that the jury was instructed that the evidence could be considered to show identity.  However, this instruction clearly limited the evidence to common plan or scheme and intent.

15

admissible on a proper basis, the court should conduct an Evidence Code section 352 balancing analysis to ensure there is no undue prejudice. (*People v. Lindberg* (2008) 45 Cal.4th 1, 22-23.)

Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"'Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.) We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352. (*Id.* at pp. 667-668.)

Here, the trial court admitted the evidence of the prior crime to show both intent and common plan and scheme. "'[A] common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances.' [Citation.]" (*People v. Walker* (2006) 139 Cal.App.4th 782, 803.) "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Ewoldt, supra,* 7 Cal.4th at p. 403.) The *Ewoldt* Court gave the following example in addressing the similarity required for common plan and scheme: "[I]n a prosecution for shoplifting in which it was

16

conceded or assumed that the defendant was present at the scene of the alleged theft, evidence that the defendant had committed uncharged acts of shoplifting in a markedly similar manner to the charged offense might be admitted to demonstrate that he or she took the merchandise in the manner alleged by the prosecution." (*Id.* at p. 394, fn. 2.)

Here, the similarity between the two crimes is undeniable. Both crimes were committed while defendant was with Park and in the same Walmart store. Each time defendant and Park took items from the shelves. The items were placed in Park's bag. Defendant clearly was aware that Park had put the items in the pink and white bag in the current instance as he never questioned that she did not pay for the items he put in her cart at the cash register. Further, he immediately pepper sprayed the officers when they confronted Park outside the store. Finally, he hid the bag under a van for Park and inside the bag were items he had placed in Park's shopping cart. The evidence of the prior offense showed a common plan and scheme to take items from Walmart.

"In order to be relevant to prove intent, the other crime 'must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.' [Citations.]" [Citation.]' [Citation.]" (*People v. Ramirez* (2006) 39 Cal.4th 398, 463; see also *People v. Carter* (1993) 19 Cal.App.4th 1236, 1246.) As outlined *ante*, both events were similar; they both involved the same parties and same modus operandi. The prior offense was admissible to show defendant possessed the intent to steal the items and aided and abetted Park in stealing the items.

In any event, even if the trial court erred by admitting the evidence, we find the error harmless. "[T]he erroneous admission of prior misconduct evidence does not

17

compel reversal unless a result more favorable to the defendant would have been reasonably probable if such evidence were excluded. [Citations.]" (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1018-1019; see also *People v. Felix* (1993) 14 Cal.App.4th 997, 1007-1008.)

Initially, the jury was instructed that even if they found the prior offense occurred, "that conclusion is only one factor to consider along with all the other evidence. It is not sufficient, by itself, to prove that the defendant is guilty of Counts 1 and 2. The People must still prove each charge beyond a reasonable doubt." As such, based on the instruction, the jury did not find defendant guilty solely on the basis of the prior offense, but rather, was required to consider all of the evidence in reaching its decision that defendant was guilty of the charges. (See *People v. Holt* (1997) 15 Cal.4th 619, 662 ["Jurors are presumed to understand and follow the court's instructions."].)

The evidence as a whole in the current case overwhelmingly supported defendant's guilt. Defendant entered the store with Park and Volk and immediately placed items in Park's shopping cart. Although he was not present when Park concealed the items in her bag, he reconvened with her and Volk at the cash register. He never questioned that Park did not pay for the items he had placed in her cart. Further, he helped secret the bag under the car for Park and tried to ensure their escape by spraying tear gas in the faces of Randolph and Romanowski. Based on the foregoing, even if the trial court erred by admitting the prior offense, it is clear that "a result more favorable to the defendant would [not] have been reasonably probable if such evidence were excluded. [Citations.]" (*People v. Scheer, supra,* 68 Cal.App.4th at pp. 1018-1019.)

18

IV

DISPOSITION

We order the clerk of the superior court to modify the abstract of judgment to strike the section 667.5, subdivision (b) prior that is denoted as being stayed. It shall forward a modified abstract of judgment to the California Department of Corrections and Rehabilitation. In other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

19