Filed 7/17/15  P. v. Lopez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)


| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOEY ALFREDO LOPEZ,<br><br>        Defendant and Appellant. | C074522<br><br>(Super. Ct. Nos.<br>CR-F-12-2836 &<br>CR-F-10-5556) |


Defendant Joey Alfredo Lopez appeals his convictions for robbery, with personal use of a firearm; two counts of assault with a firearm, with personal use of a firearm; burglary, with personal use of a firearm; and possession of a firearm by a felon.  He contends the trial court abused its discretion in admitting evidence of a prior bank robbery to prove identity and common scheme or plan.  We affirm.

BACKGROUND

In the early evening of June 20, 2012, a man entered the Cigarette Stop tobacco store armed with a shotgun.  He cocked the shotgun and pointed it at the store's owner Hiteshwar Nahal and an employee Mohammad Yassar.  The gunman demanded money from Nahal, saying, "money, money . . . I need more money."  Nahal went to the register,

1

gave the gunman all the cash inside, about $100, and said, "I give you money . . . [d]on't kill me." The gunman also took a number of T-shirts, including several extra-large Pro Cali shirts, and Nahal's cell phone. As he left the store, he told Yassar and Nahal to lie down. Yassar was so frightened he stopped thinking. He put his hands up and lay down on the floor. He did not understand the man, but was afraid he would be shot. He stayed prone on the floor until the gunman left the store. Nahal described the gunman's clothing as wearing a long-sleeved T-shirt, black and red shorts, and white shoes. He also noticed the robber had a zigzag tattoo on the back of one leg below the knee; he thought it looked like a snake.

Dino Clark was in his car in the parking lot behind the store. He saw a man with a limp walking toward him from the rear of the tobacco store. Clark saw the man had a shotgun or rifle tucked under his clothing; the barrel was poking through the bottom of his pants leg. The man appeared to be Hispanic and in his late 20's. He was wearing a baseball hat, white T-shirt, and shorts. The man went to a dark colored Chevrolet with faded dark paint, opened the door, and tossed his gun and a bag of shirts inside. Another man was in the driver's seat, the gunman got into the passenger seat and they drove away. Clark noticed the first two characters of the license plate were "6-V." Clark went into the store and Nahal told him the store had been robbed, so they called 911.

Nahal's store had multiple surveillance cameras. The surveillance tapes showed the gunman was wearing a long-sleeved T-shirt, an Oakland Raiders baseball cap, black shorts, and white shoes. Yassar, Nahal, and Clark each identified defendant in a photo lineup as the man who robbed the store. Each also identified defendant in court as the perpetrator of the robbery. Yassar was only 60 to 70 percent certain of his identification.

The day after the store robbery, defendant entered a River City Bank and approached a teller.[1] He was wearing a baseball cap with a black brim and a Raiders emblem, a gray long-sleeved shirt, and jeans. He handed the teller a note and said, "Don't give me any funny money." The teller took about $100 or $200 from the till and put it on the counter. Defendant put the money in his pockets and walked out of the bank. He got into the passenger seat of a charcoal gray Chevrolet. The car had no rear license plate. The bank's operations supervisor Angela Casey described the robber as being about five feet seven inches tall and either White or Hispanic. At trial, Casey identified defendant as the bank robber.

In investigating the bank robbery, Sacramento Police Officer Emily Griffin went to an impound lot to photograph a gray Chevrolet with the license plate number 6VAV094. Law enforcement believed the car had been involved in the bank robbery and was "associated" with defendant's ex-girlfriend. Inside the car was a folder that contained a photocopy of defendant's driver's license. Casey identified this as the car defendant got into after the bank robbery.

On July 10, 2012, Sacramento police officers located defendant in an apartment. He was wearing a pair of red and black shorts that matched those on the surveillance video of the store robbery. Defendant also has a tattoo on his right calf with wings depicted by sharp horizontal and vertical lines. In their search of the apartment, officers found a shotgun in a bedroom closet. Nahal identified the shotgun found in defendant's apartment as being similar to the one used in the robbery. They also found a pair of light colored basketball shoes and an extra-large Pro Cali T-shirt.

---

[1] By the time of trial, defendant had pled guilty to the bank robbery.

PROCEDURAL HISTORY

An information charged defendant with two counts of armed robbery of a tobacco store (Pen. Code, § 211--counts 1 & 2), two counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2)--counts 3 & 4), burglary (Pen. Code, § 459--count 5), and being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)--count 6). The information also alleged defendant had personally used a firearm in counts 1 through 5. (Pen. Code, §§ 12022.53, subd. (b) & 12022.5, subd. (a), respectively.) The information also alleged defendant had a prior serious felony conviction. (Pen. Code, §§ 667, subd. (e)(1), 667, subd. (a)(1).)

The trial court dismissed count 2 on the People's motion for lack of evidence. The jury found defendant guilty on the remaining counts and found all the firearm allegations true. In bifurcated proceedings, the court found the prior conviction allegation true. The trial court sentenced defendant to an aggregate term of 31 years in state prison.

DISCUSSION

Defendant contends the trial court abused its discretion by admitting evidence of the bank robbery under Evidence Code section 1101, subdivision (b)[2] to prove identity in the store robbery. He contends the evidence had limited probative value and "enormous" "prejudicial potential," "because it exposed the jury to the fact that [defendant] had committed an armed robbery of a nearby bank just one day after the robbery" of the store. We agree the trial court erred in admitting the evidence, but find the error harmless.

Background

The People moved in limine to introduce evidence of defendant's bank robbery under section 1101, subdivision (b). The People offered the evidence to prove identity and common plan and scheme. The proffered evidence was that a light-skinned Hispanic

---

[2] Undesignated statutory references are to the Evidence Code.

4

man in his early 20's with a thin moustache and goatee entered the cigarette shop carrying a shotgun. The man was wearing a white baseball cap with a black NFL Raiders emblem; gray sweatshirt; red, black, and white athletic shorts; and white tennis shoes. He pointed the gun at Nahal, racked the pump, and demanded money. He also pointed the gun at Yassar and demanded money. Nahal gave him money from the register. The man then grabbed several Pro Cali T-shirts. The man ordered Yassar and Nahal to get on the ground. The man was seen leaving the scene in a black or gray Chevrolet sedan with a license plate beginning with 6V and with an eight elsewhere in the sequence.[3]

As to the bank robbery, the People proffered that a 26- to 27-year-old Hispanic man with a moustache and goatee entered the bank wearing a white Raiders hat with a black emblem, gray sweatshirt, and white shoes. He handed the teller a note saying, " 'This is a robbery and don't pass that wha-cha-ma-call-it.' " The man told the clerk to " 'hand over the top drawer, 20s, 50s and 100s.' " The clerk handed over the money. Casey saw the man leave the scene in a gray Chevrolet.

Defendant filed a written objection and argued the points of similarity between the two robberies were "virtually non-existent and woefully inadequate for the purposes of establishing identity and completely non-existent to establish common plan and scheme."

The People argued the bank robbery was not inflammatory, as it was less violent than the store robbery; in the store robbery defendant cocked the shotgun and pointed it at Nahal's face. They also argued it was highly probative because defendant was wearing "exactly the same hat, he's wearing the same shirt, he's identified as the robber. [¶] . . . He's of the same height. He's of the same physical description." The People contended

---

[3] In assessing the trial court's evidentiary ruling, we must consider the facts known to the court at the time the ruling was made. (*People v. Hartsch* (2010) 49 Cal.4th 472, 491; *People v. Hernandez* (1999) 71 Cal.App.4th 417, 425.) Accordingly, these facts are taken from the prosecution's motion, not the trial testimony.

the bank robbery was committed in much the same way as the store robbery in that defendant walked into the premises, contacted a worker and took money from the worker, albeit using a different means of fear. The People also argued as to each offense, defendant left in an identical car, which was tied to him. Thus, in each offense he "executes the same crime, by using the same getaway driver, same means of hiding his face [(baseball cap)], where it's within 24 hours and within 15 miles, it helps establish his identity, and it also helps establish, um, the way he executes those crimes."

The court noted in viewing the proffers, "there are similarities and differences . . . the similarities appear to be that [in] both instances the person was wearing a gray or lighter color shirt or covering that was long sleeved. [¶] As I understand it, at least the gray shirt, the hat, was similar. It was also reported that the defendant left, in both instances, in a sedan which had a license plate with the letters 6V on it. There was also a similarity in the person that committed both offenses: Hispanic male, of a certain age, with a goatee, um, and height and weight being similar." The court noted the differences that in the store robbery a shotgun was used as opposed to a note in the bank robbery, the perpetrator of the store robbery wore shorts, whereas the bank robber wore pants. Also in the store robbery, bills of smaller denomination were acquired.

The court ruled there were sufficient similarities between the two crimes to establish "a plan or process of a robbery, as well as most importantly, identification" to render the evidence admissible.

Analysis

"Character evidence, sometimes described as evidence of propensity or disposition to engage in a specific conduct, is generally inadmissible to prove a person's conduct on a specified occasion. (. . . § 1101, subd. (a).) Evidence that a person committed a crime, civil wrong, or other act may be admitted, however, not to prove a person's predisposition to commit such an act, but rather to prove some other material fact, such as that person's intent or identity. (. . . § 1101, subd. (b).) We review the trial court's

6

decision whether to admit evidence, including evidence of the commission of other crimes, for abuse of discretion. (See *People v. Jones* (2011) 51 Cal.4th 346, 371 (*Jones*).)" (*People v. Harris* (2013) 57 Cal.4th 804, 841.) "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity. For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380.) "Past crimes are probative of identity when they share with the charged offense a set of distinctive marks." (*People v. Felix* (1993) 14 Cal.App.4th 997, 1005.) The offenses must be so similar to each other that they "serve as a signature or fingerprint." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1056.) " 'To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual'; rather it 'need only exist to support the inference that the defendant employed that plan in committing the charged offense.' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 712.)

We do not find the descriptions of the offenses to be sufficiently similar to establish identity. Here, the similarities between the two offenses are that a Hispanic man in his early 20's, with a goatee and moustache, entered an establishment and demanded money. In both offenses, the man was wearing a white baseball cap with a Raiders emblem and a gray sweatshirt. In both offenses, defendant left the scene in a dark colored Chevrolet sedan. These are not sufficiently distinctive characteristics to support an inference that the same person committed both acts. Raiders clothing and gray sweatshirts are neither unique, distinctive, or unusual particularly not in Northern California. Nor are the physical descriptions of the perpetrator or the vehicle involved distinctive. The fact that in each instance defendant entered an establishment and

7

demanded money is not at all distinctive in the commission of a robbery. These features in no way " 'set the charged and uncharged offenses apart from other crimes of the same general variety.' " (*People v. Felix, supra,* 14 Cal.App.4th at p. 1005.) Moreover, the crimes themselves are quite different. The type of establishments robbed were different; a store versus a bank. The method of accomplishing the robberies was different, in one a gun was used and in the other a note.

Prejudice

Despite the error in admitting the evidence of the uncharged offense, we find the admission to be harmless error. (*People v. Watson* (1956) 46 Cal.2d 818.) Defendant relies on our decision in *People v. Hendrix* (2013) 214 Cal.App.4th 216 to support his claim the error here is not harmless. Here, unlike *Hendrix*, the evidence against defendant was overwhelming. There was surveillance video of the robbery taking place. This was shown to the jury and admitted into evidence. Defendant was photographed by surveillance cameras committing the store robbery. Those photographs were admitted into evidence. Nahal described a tattoo on the robber's calf similar to the tattoo on defendant's calf. A photograph of that tattoo was also admitted into evidence. All three witnesses at the scene identified defendant both in a photo lineup and at trial. The robbery was committed with a shotgun similar to the shotgun law enforcement found at defendant's apartment. The perpetrator of the robbery also took a number of extra-large Pro Cali shirts from the store. Law enforcement found an extra-large Pro Cali shirt in defendant's apartment. Clark saw defendant leave the scene in a dark Chevrolet, with a license plate number with the first two digits of 6V. Defendant's ex-girlfriend owned a dark Chevrolet, with a license plate starting with 6V. Law enforcement found a photocopy of defendant's identification in the car. When he was arrested, defendant was wearing black and red shorts similar to the ones depicted in the surveillance images. On this record, there is no reasonable probability that but for the error the outcome of the trial would have been different.

DISPOSITION

The judgment is affirmed.

                                    ___BLEASE_____, J.


We concur:


___RAYE_____, P. J.


___MURRAY_____, J.